## Patrick *against* Hallett and Bowne.

THIS was an action on a policy of insurance, dated the 31st of *December*, 1796, on the *vessel* called the *Peggy*, at and from *Turks-Island* to *New-York*. The plaintiff declared for a total loss by the perils of the sea. The cause was tried at the *New-York* sittings, *April*, 1805, before Mr. Justice *Thompson;* and the defendants *demurred* to the *evidence* produced on the part of the plaintiff. The mate of the *Peggy* who was examined under a commission, deposed, that she remained at *Turks-Island* three days, and sailed from thence on the 12th of *November*, 1796, laden with salt for *New-York*. When she sailed from that island she was, in every respect, sea-worthy, and competently equipped. In the evening of the day of her departure, she was boarded by a boat from a *British* ship of war, the *Severn*, the officer of which took out three of the seamen belonging to the *Peggy*, but promised to return the men, or send an answer. The *Peggy* lay to until 8 o'clock, P. M. when the *Severn* made sail, without returning the men or sending an answer.— The captain of the *Peggy* then stood to the northward, in order to get into the Road of *Turks-Island*, for the purpose of procuring three seamen to replace those which had been impressed, and which were necessary to the safe navigation of the vessel. About one o'clock in the morning of the next day, the mate heard the watch on deck say, that the vessel was *water-logged;* and on sounding the pump, three and an half feet of water appeared in the hold, which it was believed was made between the hours of twelve and one, as the witness had tried the pumps at twelve, and found the vessel tight. Every endeavour was made, without effect, to free the vessel; and the water increasing very rapidly, signals of distress were made, as the vessel was near the island, but heavy squalls of wind and rain, prevented their receiving any assistance. The crew finding the vessel ready to sink, took to the boat, and reached *Salt-Key* island, to the leeward of grand *Turks-Island*. The *Peggy* sunk soon after

*If a vessel be sea-worthy at the time of her sailing, and afterwards suddenly spring a leak, and founder, without any stress of weather, or apparent cause, it is a loss by the perils of the sea, and the insurers are liable. Whether the vessel was sea-worthy or not, is a question of fact for the jury to determine. On a demurrer to evidence, the court will infer every fact which the jury could have done, had the cause been left to their decision,*

*See 2. Johns. 124.*

they left her; she floated, however, afterwards, owing, as was supposed, to the melting of the salt; and the crew went to tow her in, and found some wreckers had been out and stripped her of her sails, rigging, &c. but were unable, on account of the weather, to get her into *Turks-Island.* The witness, on his cross examination, further deposed, that the loss was occasioned by " a sudden springing a leak, and not by storms, violent winds, currents, or accidents of the sea." It further appeared in evidence that the *Peggy* was built of good oak timber, at *Boston*, in the month of November, 1794.; that in the summer of 1796, she underwent some repairs at *New-York*, and that when she sailed, about the first of *August*, 1796, from *New-York*, to the *West-Indies*, she was sea-worthy. The defendants admitted that she was sea-worthy at the time she left *New-York*. Another witness testified, that in the year 1800, while on a passage from *New-York* to *Great-Britain*, the ship of which he was the master, suddenly filled with water, and foundered immediately after she was abandoned. That he believed the ship to be perfectly staunch and strong; that such an accident might happen to the best vessel; and it might have proceeded from her striking a rock, or sunken logs, or from having been struck by a fish.

*Pendleton*, for defendant. On the former motion for a new trial in this cause, the court[*] unanimously decided, that if a vessel suddenly sinks without any visible or adequate cause to produce such an effect, the presumption of law is, that she was sea-worthy. This principle is laid down by *Marshall*[†] and *Park*[‡], on the authority of the decisions which have taken place in *England.* The same doctrine is maintained by all the foreign writers on this subject.[§] In *France*, where by a particular ordinance, a previous survey is necessary, before a vessel proceeds on her voyage, it has been held that such survey raised a *presumption*, that the vessel was sea-worthy, and proof of her not being sea-worthy was

† Treatise on the
Law of Insu-
rance, p. 367.
‡ System of
Marine Insu-
rance, 229.
§ *Casaregis* disc.
142, n. 15.
*Valin.* art 28,
29, 46, p. 76,
98. *Emerigon*,
vol. 1. p. 575,
577, 580.

[*] *January* Term, 1802. Decided by *Lewis*, C. J. *Kent*, J. *Radcliff*, J. and *Livingston*, J. *Thompson*, J. having taken his seat on the bench after the argument, declined giving his opinion.

thus thrown on the insurers. The insurers are responsible only for accidents arising from the perils of the sea, and not for any latent defect of the ship. The declaration in the present case states the loss to have happened by the perils of the sea; yet the deposition of the mate, the only witness as to the loss, expressly negatives that idea. The legal and necessary inference, therefore, is, that she was not sea-worthy at the time the voyage commenced at *Turks-Island.*

NEW-YORK,
May, 1806.

Patrick
v.
Hallett &
Bowne.

*Harison,* for plaintiff. (*Wells* on the same side.) This cause comes before the court under circumstances different from those in which it was presented on a former occasion. Then it was on a motion for a *new trial.* Now there is a *de-murrer to the evidence.* The evidence also, as to the age and built of the vessel, and that she was sea-worthy when she left *New-York,* was not adduced on the former trial. In a *case* made, the court may draw inferences. Where there is a *special verdict,* the court are bound to take facts precisely as they are found by the jury. But on a *demurrer to evidence,* the truth of all the facts which the jury *might* or *could* infer from the evidence, are admitted,† and the court may make any inference which the jury *could* have done, had the cause been suffered to go to them. Here the defendants, by their demurrer, have taken the cause from the jury, and having put themselves in this situation they must bear its disadvantages. The plaintiff is, by law, entitled to all the benefits of this demurrer, in which the defendants have compelled him to join. If no visible or external cause of the accident appear, the jury may draw the inference as to the cause of loss.§ The vessel was not two years old; she had been thoroughly repaired before she left *New-York,* and it is admitted she was sea-worthy at the time she sailed. There is no evidence, whatever, of any internal defect. The mate testifies that the wind was boisterous, and that there was a heavy sea, when the vessel filled with water. The weakness of the crew was probably the cause why the vessel could not be kept free, and the bad weather prevented all assistance from the shore. If there be any apparent contradiction in the evidence, it was the province of the

† See *Cocksedge* v. *Fanshaw,* Douglas 119. *Gibson* & *Johnson* v. *Hunter.* 2 *Hen. Black.* 187. See also a note, p. 228, of the 5th edition of *Park* on Insurance, as to the effect of a demurrer to evidence.

§ In the case of *Munro* v. *Vandam,* tried at the sittings before *Ld.Kenyon,* in Mich. Term, 1794, it is said, the jury may draw the conclusion as to sea-worthiness. See *Note, Park,* 221.

jury to reconcile it. Would they not, under all the cir-cumstances, have been justified in the inference that the ves-sel was sea-worthy, and that she was lost by the perils of the sea? If they might have made that inference, the court are bound to do the same; for to decide in favour of the defendants, the court must believe it utterly impossible for the jury to make the inference. In the case of *Eden* v *Par-kinson*,† Lord *Mansfield* observes, that " it is an implied warranty, that every ship insured must be tight, staunch and strong; but it is sufficient if she be so, at the time of sailing. She may cease to be so in 24 hours after her depar-ture, and yet the underwriter will continue liable." The case of the *Mills Frigate*,‖ is the leading case from which all the doctrine about *sea-worthiness*, in the *English* courts, has originated. If the circumstances of that case are atten-tively examined it will be found to be much stronger for the defendants, than the one now before the court. The *Mills Frigate* sprung a leak without any bad weather; it was found also, that her bolts were so rusty, that they could not hold the planks. Yet it will be seen, by adverting to the last edition§ of Mr. *Park's* treatise on insurance, that judgment was given in the exchequer chamber, on a demurrer to the evidence, in favour of the *assured;* which judgment was afterwards *affirmed*, in error.¶

*Riggs*, in reply. On a demurrer to evidence, the court may make every inference, which the jury could *rightfully* draw; not every possible inference which might be drawn by them. The evidence now before the court is, as to every material point, the same, as was presented when the motion for a new trial was granted. Is it possible that the court can now decide that the jury might have rightfully and fairly in-ferred that the vessel was *sea-worthy ?* If the evidence then before the court, did not warrant such an inference, it can-not, at this time, justify that conclusion. It is stated that the vessel was sea-worthy when she left *New-York*, but it does not, therefore, follow that she was so, three or four months after, at *Turks-Island*, where the voyage insured commenced. The propriety of the former decision of the court, in this cause, seems to be questioned.

† *Doug.* 732.

‖ *Park*, 222.

§ 6th Edition, 228. In his 3d edition, *Park* states that the judgment was given for the underwriters

¶ Mr. *Park*, in the last edition of his work, states the ground of this decision to be, that the court thought the evi-dence did not precisely prove that the ship was not sea-worthy, at the time of the insu-rance taking place. See also, his *note*.

*Court.* We shall adhere to that decision, unless a demurrer to evidence, or any new facts, make a difference in the case.

LIVINGSTON, J.   Whatever doubts may have once existed in *England* respecting an underwriter's liability, in case of a vessel not being sea-worthy, when the risk commences, it is now well settled there, as well as in every other commercial country, of whose laws we have any knowledge, that this is an implied warranty in every contract of insurance. If it, however, turns out, that she is not so, or in other words, not in the condition to encounter the ordinary perils of the voyage proposed, the policy is without consideration, and void. Though this be the law, about which there is no dispute, it must be very difficult, in many cases, to shew the state of a vessel at the commencement of a voyage, with sufficient certainty, to satisfy a jury that she was sea-worthy; for it is admitted, if she be so then, it is enough, whatever may be her condition immediately after. This is purely a question of fact, and like all others, will, sometimes, admit only of circumstantial proof; if there were any evidence, now, from which a jury might have drawn this conclusion, it must be considered as admitted by the demurrer,* and that too, without any scrupulous inquiry, whether such inference would be correct or not, for courts should not encourage this practice. It is not only productive of considerable delay and expense, (for this action is already in the *eighth* year of its existence,) but unless all inferences are admitted, which a jury might have drawn, judges, instead of confining themselves within their province of deciding on questions of law, will also become triers of every matter of fact. If this be the rule in examining testimony, when brought up by a demurrer, who can say that a jury might not, and very correctly too, have been of opinion, that the *Peggy* was sea-worthy when she sailed from *Turks-Island* for *New-York?* The mate swears positively to this fact, when he says, " that " she was then tight, strong and staunch, and competent,

NEW-YORK,
May, 1806.

Patrick
v.
Hallett &
Bowne.

†P.371. The 5th edition of *Park*, was published the same month. *Marshall* cites the case from *Park*, probably, from the earlier editions. In a note he observes (p. 372) that an action on the same policy was tried in the *common pleas*, before Lord *Camden*, who directed the jury to find for the plaintiff, but on a motion for a new trial, he altered his opinion, and the court unanimously determined, that the ship not being sea worthy, the plaintiffs, however innocent, could not recover.

* *Douglas*, 119 —2. *Hen. Bl.* 187.

"in point of strength and ability, to her intended voyage, "and that she had a sufficient crew and was well supplied "with provisions, and other necessaries." Here are all the ingredients of sea-worthiness.

Two other witnesses depose, that they repaired the *Peggy*, in the summer preceding her loss in *November*, that she was tight when she went out of their hands, and that they thought her sea-worthy. She was built too of very good oak timber, and was only two years old when lost; in addition to this, it is admitted by the defendants on the record, that she was sea-worthy, only three months prior to the shipwreck. If the jury, on this positive testimony of the mate, and on the circumstances of her being a young vessel, built of durable materials, of her being admitted sea-worthy only three months before her loss, and on the general presumption, that every vessel is so, until the contrary appears, might not very fairly have found for the plaintiff, I hardly know what would have justified their so doing.

In opposition to all this, it is said, she was lost the day after sailing, "without any stress of weather, or appa- "rent cause or accident," and that then the fair and natu- ral presumption is, against her being sea-worthy. Without controverting or acceding to this proposition, which must frequently bear very hard on the assured, it is not true in point of fact, that her loss cannot be ascribed to any appa- rent cause or accident; and if it were so, it would only throw on the insured the *onus* of shewing, (which, as has been stated, the jury may very fairly have thought was done,) that at the time of her departure from *Turks-Island*, she was in truth, sea-worthy. But there is no occasion to have recourse to these inferences, because the mate ex- pressly ascribes the loss to a " *sudden springing of a leak*," or will it be denied, that springing a leak, is a peril insur- ed against, or in face of the positive declaration of another witness, who was a sea-faring man, that it may happen to the best vessel and in mild weather. I am not prepared to push to this length, the doctrine of sea-worthiness,

(which, as it respects an innocent shipper of goods, has nothing to recommend it,) being very clearly of opinion, that every accident that can be traced to *the springing of a leak*, whether in a calm or storm, or whether after a short or long absence from port, is a loss within the policy, and is not of itself evidence of an unworthy or insufficient vessel. The plaintiff must, therefore, have judgment.

THOMPSON, J. SPENCER, J. and TOMPKINS, J. concurred.

KENT, C. J.  The question is, whether the plaintiff is entitled to recover, upon the testimony he has produced, and to which the defendants have demurred.

A verdict was taken for the plaintiff in this cause, upon the same evidence, in *April* 1801, and at *January* Term 1802, a new trial was awarded, because, the law will *intend* a want of sea-worthiness, when no visible or rational cause of the loss appears, or any other than some latent and inherent defect in the vessel.

The vessel when she sailed from *Turk's Island*, ought to have been *tight, staunch and strong*, and competent to resist the ordinary action of the winds and waves, during the voyage insured. The question is, what will the law presume, when she suddenly springs a leak, within a few hours after her departure, " without its being occasioned by storms, violent winds, currents or accidents of the sea." I continue of the opinion given when the new trial was awarded, that the law will presume the vessel not sea-worthy; and such is the conclusion which the law draws from the testimony before us.

There is but one *English* decision, that relates in any material degree, to the subject, and that is the case of the *Mills Frigate*, in the court of exchequer. *(Park* 222.*)* In that case, there was also a demurrer to the evidence. The principal fact was, that the frigate sailed from *Nevis* in the *West-Indies*, for *London* on one day, and on the next, she sprung a leak by starting a plank, without any bad weather, or extraordinary swell of the sea. The

NEW-YORK,
May, 1806.

Patrick
v.
Hallett &
Bowne.

judgment of the court was in favor of the insurer, and on a writ of error to the exchequer chamber, it was always understood until very lately, and so stated in all the books, that the judgment was affirmed; but Mr. *Park*, in the last edition of his work, observes, that he has now discovered to the contrary. Be that fact as it may, the court of C. B. on the same policy, and facts, decided, as the court of exchequer did, that the frigate was not sea-worthy. Under the peculiar history of the report of that case, and the different decisions upon it, its authority, if not much impaired, cannot be considered as unfavourable to the defendants.

*Marshall* is decidedly of opinion, *(p.* 367,*)* that where a ship is lost, or incapable of proceeding on her voyage, and this cannot be ascribed to stress of weather, or any accident in the voyage, the fair and natural presumption is, that she was not sea-worthy; and it is incumbent on the insured to show, that at the time of her departure, she was in fact sea-worthy; that it is a wholesome rule, that the insured should be held to pretty strict and cogent proof of this. If, on the other hand, it appear from the facts in the case, that the loss may be fairly attributed to sea-damage, or any other unforeseen misfortune, the *onus probandi* will lie on the insurers, if they allege that the ship was not sea-worthy.

This opinion is supported by that of *Casaregis*, and by a decision of the *Rota of Florence* in 1726, in which it was decided, that the assured was bound to prove affirmatively, that the loss happened by one of the perils insured against, otherwise, the *innavigability* of the vessel from inherent defects, would be intended. *(Marshall* 365,*)* The same presumption is adopted by *Valin*; *(Vol.* 2, 103,*)* but the *French* law had, in part at least, drawn a different conclusion from one of the articles of the ordinance of 1682, relating to freight, *(Ord. de la Mar. tit. du fret Art.* 12,*)* and which had nothing to do with the question of insurance. The deduction drawn from that

article was, that every ship was presumed sea-worthy at the time of her departure, and that it lay with the opposite party to prove the contrary. To prevent the abuse of this presumption, of which the insurers were too often the victims, the ordinance of 1779 was passed, requiring a survey previous to every voyage; since that time the presumption, either the one way or the other, depends entirely upon the fact of the previous survey. *Emerigon* however, observes, that this construction of the article on freight, was but in part adopted by the *French* law, and in the eight cases which he reports, as argued and adjudged on the question of sea-worthiness, a previous survey seemed generally to be the cause of turning the presumption against the insurers. (*1 Emerigon*, 374, 576 to 591.)

I am therefore of opinion, that judgment ought to be rendered for the defendants.

Judgment for the Plaintiff.