## SNETHEN *v.* THE MEMPHIS INSURANCE COMPANY.

Where in an action on a policy of insurance on merchandize on board of a barge, which was sunk while in tow of a steamer, the evidence shows that the barge was strong and in good condition, and that it was possible that her sinking may have been owing to some unseen and undiscovered peril of the river, it would be to extend the doctrine of seaworthiness too far, to avoid the policy because the cause of the accident is not specifically ascertained by the evidence.

The general rule is, that seaworthiness is presumed ; but where a vessel springs a leak soon after the risk commences, without any apparent cause from perils within the policy, a new presumption arises of unseaworthiness ; but this latter presumption is not conclusive ; it may rebutted by evidence.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. *Hunter*, for the plaintiff, cited *Patrick* v. *Hallet*, 1 Johns. 241. 2 Phillips, 758. 1 Marshall, 165. *Watts* and *Spring*, for the appellants, relied on Marshall on Ins., (1 am. ed ) pp. 156, 363. Phillips on Ev., (2 am. ed.) vol. I, p. 324. 3 Johns. Cases. The judgment of the court was pronounced by

SLIDELL, J. This action is upon a policy on merchandize loaded on a barge, in tow of a steamer. The barge was suddenly discovered to be leaking badly and sinking, on the second day after the departure from St. Louis, on the way to New Orleans. Upon discovering her condition the steamer was turned towards the shore, and in doing so the barge careened, broke her fastenings, turned over, and sunk. The defence is that the barge was unseaworthy. None of the witnesses undertake to point out a specific cause for the accident, as that the barge struck a snag or sand bar, or incurred any other evident casuality. The court below rejected the defence; and gave judgment for the plaintiff. The defendants have appealed.

The evidence to the point of seaworthines at the inception of the voyage, is extremely full and cogent. It comes not merely from the officers and crew of the steamer, but from other reliable sources, such as the inspectors employed by the St. Louis Insurance Company, one of whom was inspector of hulls under the act of Congress. A case could rarely be presented, where the testimony of witnesses to the fact of seaworthiness would be more complete. On the other hand, the failure to fix the accident upon some specific cause, is a circumstance which has been zealously urged by the defendants' counsel, as creating a presumption of unseaworthiness, and certainly deserves consideration in determining the question of fact upon which the cause turns.

The witnesses offered by the plaintiff, who were eye-witnesses of the dis-

aster, concur in saying that she could not have sunk so rapidly after the discovery of the leak, if some external violence had not occurred. On the other hand, two witnesses examined by the defendants, and who professed to be experienced in such matters, say, that if a barge in tow of a steamer, comes violently in contact with any obstacle, such as a snag or sand bar, the shock would be felt on board the steamer, and express their surprise that a barge should sink when in tow of a steamboat, from any external cause or shock, without its being felt. One of these witnesses concedes, however, that an external peril might, under some circumstances occur, and sufficient to cause the sinking of a boat, without being observed at the moment, such as sliding upon a stump in bringing the boat to land, the working out of a water plug, &c., and that he has heard of disasters occurring to boats without any satisfactory reason being assigned; that it is very difficult, in some cases, to ascertain the cause of a barge or steamer's sinking.

SNETHEN
v.
MEMPHIS INSURANCE COMPANY.

The snags, shoals, logs, and sand bars, give a peculiar danger to the navigation of the Mississippi generally; and the part of the river where the present loss occurred, was not exempt from those sources of danger. After commenting on those peculiar features of the navigation of the Mississippi, the district judge expresses his opinion that the barge was probably injured at a landing where some cargo was taken, on the night before the accident, which occurred at an early hour in the morning, the steamer and barge having laid to all night.

With proof so cogent as was offered to show the youth, strength and good condition of the barge, and with a reasonable possibility that some unseen peril of the river, whose effect was not at the moment discovered, may have caused this loss, it would be pushing the doctrine of seaworthiness too far, to avoid this policy because the cause of the accident is not specifically ascertained by the evidence.

The general rule is, that seaworthiness is presumed. But when a vessel springs a leak soon after the risk commences, without any apparent cause from perils within the policy, then a new presumption arises, and the unseaworthiness will be intended. But this latter presumption, however, is not conclusive; it may be countervailed. Chancellor Kent seems to recognize this, although he dissented from the majority of the court in *Patrick* v. *Hallett* and *Bowne*, 1 Johns. 246, for he cites, with apparent approbation, the opinion of Marshall to the effect, "that where a ship is lost, or incapable of proceeding on her voyage, and this cannot be ascribed to stress of weather or any accident on the voyage, the fair and natural presumption is, that she was not seaworthy, and it is incumbent on the insured to show that, at the time of her departure, she was in fact seaworthy."

In *Talbot* v. *The Commercial Insurance Company*, 2 Johnson, 129, the court seems to have narrowed the liberality towards the assured of the doctrine in *Patrick* v. *Hallett*; but still the doctrine is distinctly enunciated that, the presumption of unseaworthiness, arising from the springing of a leak soon after the commencement of a voyage, without any apparent cause or extraordinary accident, may be repelled.

In reviewing the case of the Peggy, where the liability of the underwriter was maintained by the same court, although the vessel, without stress of weather or apparent cause, became water-logged, and sunk on the second day of her voyage, the court enumerates the prominent facts which were then considered as countervailing the presumption of unseaworthiness; the fact that she was two years old, the durable character of her materials, the testimony of her be-

SNETHEN
v.
MEMPHIS IN-
SURANCE COM-
PANY.

ing tight, staunch, and strong when she sailed, coupled with the admission of the underwriter that, she was seaworthy three months before. This evidence the court then compared with the facts of the case before it, where the vessel was between eight and nine years old.

After a careful consideration of the testimony, which satisfied the mind of the district judge that the barge was seaworthy at the commencement of the voyage, that accidents proceeding from perils of the river, might occur to produce a leak and eventually a loss, without being at the moment perceived, and that some such peril must have been the operating cause in the present case, we have deemed it to be our duty to affirm the judgment.

*Judgment affirmed.*[*]

---

[*] For the reasons assigned in this opinion, judgment was at the same time affirmed, in a case between the same plaintiff and the *Tennessee Marine and Fire Insurance Company;* the parties having agreed that the judgment in the case against the *Memphis Insurance Company*, should be conclusive of this.