# Case No. 17,415.

## WERK v. LEATHERS.

[1 Woods, 271.][1]

Circuit Court, D. Louisiana. Nov., 1872.[2]

SHIPPING — PRESUMPTION OF SEAWORTHINESS — CHARTER PARTY—LIABILITY OF OWNER.

1. Ordinarily, a ship is presumed to be seaworthy. But this presumption is rebutted by proof that she is old and approaching the end of her life as a ship, and that she suddenly failed in a vital part without any apparent cause.

[Cited in The Lizzie Frank, 31 Fed. 480.]

2. The owner of a ship who charters her to another tacitly agrees that she is in suitable condition for the use to which she is to be put.

[Distinguished in The Lizzie Frank, 31 Fed. 479.]

3. If there is a defect in the ship by which she becomes disabled, even though it may not be apparent upon examination, the charterer cannot recover the charter money, and he will be liable for damages occasioned by the defect.

[Distinguished in The Lizzie Frank, 31 Fed. 479.]

[Appeal from the district court of the United States for the district of Louisiana.] In admiralty.

Thomas Hunton and Given Campbell, for libellant.

Wm. M. Randolph, Charles B. Singleton, and R. H. Browne, for respondent.

WOODS, Circuit Judge. On the 31st day of March, 1869, respondent chartered the steamer Vicksburg, of which the libellant was the then owner, for the term of two months from that date, at the price of $1,750 per month, and agreed to return her in the same condition in which he received her, and possession was given to respondent of

the steamer on the same day. The respondent paid to libellant the agreed price for the first month and $500 on the price for the second month, leaving a balance of $1,150. Before the expiration of the second month of the term of the charter (and it is remarkable that neither the libel, answer nor evidence shows precisely when) the shaft of said steamer broke, and the cylinder head of one of her engines blew out, and her woodwork was thereby somewhat damaged. Thereupon respondent delivered the steamer to libellant and refused to make the repairs necessary to place her in the condition in which he received her, and has not paid the balance of the stipulated price for her use during the second month. The libellant claims $1,850, the amount which he says was required to repair his steamer; $5,000 damages, and $1,190 balance of her hire for one month, making in all $8,040, for which he asks a decree. The defense is, that the machinery of the Vicksburg was not in perfect order on March 31, the day she was chartered; that her starboard shaft was cracked at that time, although the defect was not apparent; that her boilers were in an unsafe condition, and that she was not seaworthy.

It is clearly established by the proof that the breaking of the shaft and other damage to the steamer occurred when she was running in smooth, deep water, and carrying only one hundred and ten pounds of steam.

The question to be solved by the court is, was the breaking of the shaft the result of an inherent defect existing at the date of the charter party, or not? If it was, then the libellant is not entitled to recover the balance of money stipulated by the charter party, nor the damage resulting from the breaking of the shaft.

I am satisfied from the evidence that the breaking of the shaft was the result of an inherent defect existing at the time of the charter party. Ordinarily the presumption is in favor of seaworthiness. Snethen v. Memphis Ins. Co., 3 La. Ann. 475. But this presumption is completely rebutted where the ship as in this case is shown to be old and approaching the end of her life, as a boat, and when she suddenly fails in a vital part, without any apparent cause. Thus Marshall, is decidedly of opinion that "where a ship is lost or is incapable of proceeding on her voyage and this cannot be ascribed to stress of weather or any accident on the voyage, the fair and natural presumption was that she was not seaworthy." Marsh. Ins. 367. In the first place it is in evidence that the shaft of the steamer was too small; two shafts of the same diameter had before been broken on this steamer. It is further in evidence that when the shaft snapped asunder, the section thus exposed showed that a part of the fracture was rusty and appeared old, while the rest appeared bright

---

[3] See appropriation acts of June 27, 1834, c. 92, § 2 [4 Stat. 698]; of March 3, 1835, c. 30, § 3 [4 Stat. 771]; of March 3, 1837, c. 30, § 2 [5 Stat. 157].

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

[2] [Affirmed in 97 U. S. 379.]

and new. This condition of the fracture cannot be accounted for as is attempted by any strain on the shaft occurring the day before. The appearance of the fracture as described by the witness evidently shows that the crack in the shaft was of older date.

We have these facts then. About five or six weeks after the date of the charter party, this ship having a shaft too small for the strain upon it is disabled by the breaking of the shaft in smooth deep water and without any extraordinary circumstances to account for it, and on inspection of the fracture, shows a defect that had existed for some time. I think these facts rebut the presumption of seaworthiness at the time of the charter party. "It is the duty of the owner of a ship when he charters her or puts her up for freight, to see that she is in a suitable condition to transport her cargo in safety. and he is to keep her in that condition unless prevented by perils of the sea or unavoidable accident. If the goods are lost by reason of any defect in the vessel, whether latent or visible, known or unknown, the owner is answerable to the freighter upon the principle that he tacitly contracts that his vessel shall be fit for the use for which he thus employs her. This principle governs not only in charter parties and in policies of insurance, but is applicable in contracts of affreightment." Putnam v. Wood, 3 Mass. 485. "If there should be a latent defect in the vessel unknown to the owner and undiscoverable upon examination, yet the better opinion is that the owner must answer for the damage occasioned by the defect." 3 Kent, Comm. 205, note a; Lyon v. Mells, 5 East, 428; Whitall v. The Wm. Henry, 4 La. 223.

These authorities, in the view I take of the facts, dispose of the libellant's case. He has already been paid for the time his steamer was used by the defendant, and if he has suffered any damage, it was caused by a defect in his vessel, the consequences of which, whether known or unknown, he must bear.

Let the libel be dismissed, with costs.

[On appeal to the supreme court, the decree of this court was affirmed. 97 U. S. 379.]

---

WERK (TIGHLMAN v.). See Case No. 14,-037.