## THE LIZZIE FRANK.

### HURLEY v. THE LIZZIE FRANK and Owner.

*(District Court, S. D. Alabama.   July 5, 1887.)*

1. SHIP—LATENT DEFECT IN CONSTRUCTION—NEGLIGENCE.
   Where a vessel is constructed and equipped in the mode usual and customary with other vessels of like character, and in a mode approved by competent judges and previous experience, then, in case of an accident happening by reason of a latent defect in the equipment and construction, there is no negligence on the part of the owner.
2. SAME—DUTY OF OWNERS TOWARDS SEAMEN.
   While the ship-owner is bound to provide a seaworthy ship, he is not an insurer or warrantor of the seamen against latent and undiscoverable defects in the vessel.
3. SEAMAN—INJURY IN SERVICE—RIGHTS OF.
   A seaman who is injured in the service of the ship, without the fault either of himself or the ship, can recover no compensation by way of damages from the ship, but is entitled to be healed at the expense of the ship, even after the voyage has terminated, and the seaman is discharged.
4. SAME—REMEDY—ADMIRALTY PRACTICE.
   Where a libel is filed by a seaman for *damages*, and also praying other relief, the admiralty is competent to administer a suitable remedy; and, although the court finds no damages due, it may make a decree for such expenses in healing the libelant as have been already incurred. But it cannot decree for prospective expenses.

In Admiralty.   Libel for personal **injury to** seaman on tow-boat in Mississippi Sound.

*Hannis Taylor*, for libelant.

*R. H. Clarke*, for claimant.

TOULMIN, J.   The libel in this case is filed by a seaman to recover damages for personal injury while in the performance of his duty on board of the tug-boat Lizzie Frank.   The libel avers that the cause of the accident from which the injury resulted was the imperfect, insecure, and negligent manner in which a certain appliance or part of said boat, used in towing and designated as the "chock," was fastened; that such insecure fastening was a defect in the structure and equipment of said tug; and that it broke from its insecure fastening, and struck the libelant, doing him serious bodily injury.   It is averred that the injury complained of was through negligence or fault, etc.   The claimant says, in answer to the libel, that the tug was equipped with all the apparatus and appliances that men of ordinary skill and prudence, engaged in the same business, provide their tug-boats with; that respondent used due diligence that the same should be of sufficient strength and durability to stand the strain necessarily put upon them in the performance of such work as the vessel undertook to do; and that the strain put upon the chock in the particular instance was not more than it could have been reasonably expected safely to bear.   Respondent denies that the chock was fastened in an insecure, imperfect, or negligent manner; and says

the accident was caused by some latent defect or weakness in the wooden frame of the vessel, to which the chock was fastened, and which was unknown to him, and to his employes in charge of the vessel, and could not have been discovered by them by the exercise of reasonable diligence and care. He denies that the injury resulted from any negligence or fault of himself or his agent, and avers that libelant was guilty of gross negligence in placing himself in the position where he was when he received the injury complained of, and that he was not required by his duty to be there.

If the libelant was guilty of gross negligence, as is alleged by respondent, and respondent was free from fault, then the libelant could recover nothing in this case. The proof shows that libelant was inexperienced in his position, had been but a short time aboard of the vessel, and had never before his employment on this vessel been engaged in a similar service. If his position at the time of the accident was a dangerous one, it does not appear that it was known to him to be so, or that he had any special reason to apprehend danger there. When he accepted the employment, he had a right to presume that the appliances in use on the vessel were reasonably sufficient and secure. I do not think the libelant, under the circumstances, was guilty of negligence, as is claimed by respondent.

Was there any negligence on the part of the owner of the vessel, or of his employes? Negligence is the failure to do what a reasonably prudent man would ordinarily have done under the circumstances of the situation. The owner of this vessel was required to use and exercise in its construction and equipment the usual and customary means and care adopted by reasonably prudent persons in the construction and equipment of vessels of like character. If that was not done by the owner and his agents, such failure would be negligence, and, if the libelant was injured thereby, the owner would be liable for the damages. *Sunney* v. *Holt*, 15 Fed. Rep. 880. But if the vessel was constructed and equipped with reference to the chock, and the chock was fastened in the manner and mode that was usual and customary with other vessels of like character, and in a mode fully approved by competent judges and by previous experience, then there was no negligence or fault on the part of the owner. *The Harold*, 21 Fed Rep. 428; *The Rheola*, 19 Fed. Rep. 926.

The proof satisfies me that, in all the details of the work with reference to the chock, the vessel was constructed and equipped, and the chock secured, in the usual and customary manner at this port, and in the manner approved by competent judges, and by previous experience. I find, therefore, no negligence or fault on the part of the owner or his agents, and that the allegations of the libel are not sustained in this respect. While the libel alleges negligence, and that the accident and consequent injury resulted from such negligence, the contention in the argument of libelant's proctor is that in the contract of hiring there was an implied warranty of seaworthiness of the vessel by the owner; that the breaking of the chock was the breaking of the ship in a *vital* part,—"the result of an inherent defect;" and that was evidence of unseaworthiness;

and it is contended that, if the vessel was unseaworthy, there was a breach of the implied warranty; and that, the libelant's injury resulting therefrom, the owner is answerable for the damage occasioned by the defect.

Assuming, for the present, that there was an implied warranty of seaworthiness, and that there has been a breach of such warranty by the breaking of the chock, it would not necessarily follow that the owner was guilty of negligence. A breach of warranty, express or implied, is a breach of a contract, express or implied, and a party damaged by such breach of contract would have his action *ex contractu*, and it would be immaterial whether the breaking resulted from negligence or not. There may be a breach of warranty without negligence. On the other hand, if the damage is claimed to have resulted from negligence, then the action is *ex delicto*, based on the tort, and it would be immaterial whether there was a warranty or not. The one is based on a breach of contract; the other on a breach of duty. The libel in this case assigns, as the sole breach of duty, *negligence* in the structure and fastening of the chock, and on this the claim for damages is based. Negligence in this regard, as I have said, is, in my opinion, clearly disproved, and the libelant cannot on that ground recover damages; and it is clear he cannot recover damages for breach of contract without pleading to sustain his claim.

The case of *Werk* v. *Leathers*, 1 Woods, 271, mainly relied on by libelant as authority, was where a libel was filed to recover moneys claimed to be due under and by virtue of a certain contract of hiring of a steamer. The defense was that the steamer was not in perfect order at the time she was chartered; that there was a defect in her machinery. The court found there was such defect, and that it existed at the time of the charter; and held that libelant was not entitled to recover on the principle that he tacitly agreed that his steamer was in suitable condition for the use to which she was to be put, when in fact she was not; that he impliedly warranted her to be seaworthy, when she was not so, and that, although the defect was latent, the owner of the steamer warranted her seaworthiness, and was answerable to the freighter for any damage the latter might sustain to his goods occasioned by the defect. The libel was based on a contract, and the defense to it was based on a breach of that contract. According to my view of it that case is wholly unlike the one now under consideration.

The principle that the owner of a vessel must answer for the damage occasioned by a latent defect in the vessel flows directly from the position that the owner of a freighting vessel is a common carrier, and a common carrier is an *insurer* against everything but the excepted perils, which are the acts of God or the public enemy. It would hardly be contended that the owner of a vessel is an insurer of the crew against all injuries or accidents to which they may be exposed, except those occasioned by the act of God or the public enemy. According to the English law, there is no implied warranty of seaworthiness in a contract between an owner of a ship and a seaman to serve on board of her. But it is said that this is repugnant to the American law. On consulting the American authorities, we find it stated that the owner, among other ob-

ligations to the seaman, is bound to provide a seaworthy ship, and that this means that at the commencement of a voyage the ship shall be furnished with all necessary and customary requisites for navigation, or, as the term is, shall be found seaworthy. Seaworthiness includes a competent crew. Yet the owner does not *warrant* to each seaman the competency of the others. *The E. B. Ward,* 20 Fed. Rep. 704; *Dixon* v. *The Cyrus,* 2 Pet. Adm. 411. There is no warranty that a crew shall not be negligent, and such negligence is no breach of the implied warranty to provide a competent master and crew. 1 Pritch. Adm. Dig. 989.

By seaworthiness is meant "that the ship shall be in a fit state, as to repair, equipment, crew, and in all other respects, to encounter the ordinary perils of the contemplated voyage," or, in the language of some of the authorities, "that the ship is in a condition in all respects to render it *reasonably safe* where it happens to be at the time referred to," or, as expressed by others, "that the ship was, at the commencement of the voyage, in such a state as to be *reasonably capable* of performing it." The question of seaworthiness is to be determined with reference to the customs and usages of the port or country from which the vessel sails, the existing state of knowledge and experience, and the judgment of competent persons versed in such matters.

The shipbuilders give it as their opinion that the chock on this tug was well and sufficiently constructed and secured for the contemplated service of the vessel, and that the work done and the materials used were according to the general customs and usages of this port. Judged by this standard, I find that the vessel was seaworthy; that she was in a condition to render her *reasonably safe* and *reasonably capable* of performing the service in which she was engaged. Indeed, there is no evidence to the contrary further than the fact of the accident. But the contention is the accident was caused by the breaking of the vessel in a *vital* part, and that this is evidence of unseaworthiness. While the chock of the vessel is doubtless a necessary part of its equipment for towage purposes, I doubt very much if it can be considered a *vital* part of the vessel. It is not essential to the safe navigation of the vessel, nor a necessary requisite for navigation. However, if a ship breaks in a vital part, and especially if it is an old ship, the presumption of seaworthiness, which ordinarily obtains, is rebutted. In such case the breaking may be evidence of unseaworthiness, but it is not sufficient to overcome the evidence to the contrary, such as we have in this case. See *Dixon* v. *The Cyrus,* 2 Pet. Adm. 411; *The Titania,* 19 Fed. Rep. 101; *The E. B. Ward,* 20 Fed. Rep. 704; *Werk* v. *Leathers,* 1 Woods, 271.

While the owner, then, is bound to provide a seaworthy ship, he is not an insurer or warrantor of the seaman against latent and undiscoverable defects in the vessel. A seaman who is injured or disabled in the service of the ship without fault on his own part, is by the maritime law entitled to be healed at the expense of the ship, and this after the voyage has terminated and the seaman is discharged. The principle is that the seaman is to be cured at the expense of the ship of the injury sustained in the service of the ship. He is not to receive any compensation

or allowance for the effects of the injury. But, so far as expenses are incurred in the cure, whether they are of a medical or other nature, such as for diet, lodging, nursing, or other assistance, they are a charge on and to be borne by the ship. The injury may occasion a temporary or permanent disability, but that is not a ground for indemnity from the owner, unless there has been negligence on his part. When the cure is completed, at least so far as the ordinary medical means extend, the ship and owner are freed from all further liability. They are not liable for consequential damages. The ship is not to pay what may remunerate the sufferer for his losses, or what in compassion or humanity he might demand, but what the law has measured out as the limit of justice. *Reed* v. *Canfield*, 1 Sum. 195, 202; *The City of Alexandria*, 17 Fed. Rep. 390; *The W. L. White*, 25 Fed. Rep. 503; *Brown* v. *The D. S. Cage*, 1 Woods, 401; 2 Pars. Ship. & Adm. 81, note 2.

The case of *The Atlantic*, 1 Abb. Adm. 451, implies that the allowance to the seaman for the expenses of his care and cure terminates with the voyage, or with his term of service. But I do not think this rule consistent with the weight of authority or with justice. This libel was filed to recover *damages* for the injury, but the libel also prays for such other relief as equity may require. The principle of the maritime law extending to cases circumstanced like this one, admiralty is perfectly competent to administer a suitable remedy. Its jurisdiction having attached to libelant's claim, and the extent of the compensation being but an incident to the possession of the claim, I think it competent for the court to ascertain the amount of expenses incurred by the libelant, and to decree an allowance of the same to him. The court can render a decree for such expenses only as have been heretofore incurred, and as have been shown by the evidence. It cannot decree for prospective expenses.

The expenses proven amount to $310, for which let a decree be entered.