Daniels, J.
—This action has been brought to recover for a general average loss, sustained by the sinking of the Propellor Potomac in the month of September, 1884. She was at that time lying at the Lehigh dock on the Blackwell canal in the city of Buffalo, taking in a cargo of coal. She had received on board about 771 tons, being about two-thirds of the cargo, when the men employed in loading her suspended their work for dinner. At that time the pumps were tried and no water found in the propeller. They resumed work in about an hour and after taking two or three additional tons of coal on board she was again sounded for water and found to contain about two feet of water in her hold. Her pumps, three in number, were started but failed to reduce the volume of water. Two other large pumps were soon afterwards added, but the exertions made to reduce the water by these additions were, in like manner, unsuccessful. The water continued to increase in quantity until the propeller sunk in from twelve to thirteen feet of water. By placing canvas over seams through which the water had passed into the hull and adding an additional pump the propeller was finally raised and taken to a dock upon which her cargo was removed.
This was attended with a very considerable degree of expense, and a portion of the cargo is stated to have been lost in the efforts made to raise and remove the propeller and save the cargo. The policy upon which the action has been brought was a time policy issued in the sum of $2,500, and it bound the defendant to indemnify the assured agajnst losses incurred by reason of the navigation of the lakes, river, canals, fires and jetsons, subject to the exceptions following the clause declaratory of this liability, by which losses arising out of rottenness, inherent defects, overloading and all other unseaworthiness of the propeller were excluded from the policy. For the disposition of the case it becomes necessary, therefore, to determine whether the loss, which is the subject of complaint, was produced either by rottenness, inherent defects or other unseaworthiness of the propeller. If it was not, then the defendant will be liable under the policy, while if the loss was occasioned by either of these causes, it is clear from the exceptions inserted that it will not be liable, for to render the company liable upon the policy, the loss complained of must have been occasioned *715 by one of the risks assumed by it. Smith v Universal Ins. Co., 6 Wheat., 177; Swan v. Union Ins. Co., 3 id., 168.
Exceptions of this and other descriptions are frequently inserted in policies of insurance, and where a policy is made to contain them they must be construed and carried into effect according to the intention of the parties. 2 Parson’s Maritime Law, 262.
It appeared by the evidence of the witnesses, Michael and Peter Carr, who were divers, and in that capacity went into the water to discover the condition of the propeller after she had sunk, that her bilge rested upon a log projecting from the side of the canal at the wharf out into its channel. And further evidence was given that this might have opened the seams of the propeller in such a manner as to cause the leakage. And if that were the fact established by the evidence, then the loss would be attributable to one of the causes for which the defendant would be liable under the language of the policy. But there is no evidence in the case from which it can be inferred that this log was in any other position than that in which it was found by the divers after the propeller had sunk. And if it was not, but rested upon the ground, its contact with the propeller could not have been the cause of the leak, for she commenced leaking and had, to a considerable extent, filled with water before she went so far down as to reach the depth at which the log was found. It has been urged, however, by the counsel for the plaintiffs, that the log may have been in a floating condition above the ground while the propeller was taking in her load, and that she came in contact with it in that manner, but, if that were the fact, the probabilities of her seams being opened by a floating log are so slight as not to justify the conclusion that they could be opened in this manner. Against this theory, too, is the fact that other vessels had been laden at the same place which encountered no danger or disaster whatever from this log being in the water. Then it was stated further by another witness who observed the bottom of the propeller after she had been placed upon the dry-dock, that the mud had not been rubbed off the tug at any point observed by him, and he was engaged in searching for the cause of the leak. To find the fact that the seams had been opened and the leakage had been caused by the propeller resting upon this log, would be no more than a mere conjecture, which would be an insufficient ground upon which to place a legal liability of this description.
The strong probabilities of the case are derived from the testimony of the other witnesses who, in their examination of the hull of the propeller, found square seams, out of which the oakum had either wholly disappeared or it had *716 become so wet and soft as to permit the passage of water through it. An examination of the hull of the propeller was made by two of the witnesses, one of whom was selected by each of the parties, and their observation and examination is stated to have led to the discovery that in a number of places the seams from age and repeated caulking are square, and require great care in caulking, and in a number of places the oakum has wasted and caused the leak. After careful examination, we find this to be the cause of the sinking. And their testimony upon the trial was fully confirmatory of the truth of the statement. She was a vessel near twenty-nine years old at the time the policy was issued, having these square seams in her hull, which with difficulty were made to retain the oakum driven in to fill them, and the rapidity with which she filled with water, notwithstanding the efforts made to prevent it, supports the conclusion that in running the coal into her hull from chutes used for that purpose, her seams were by force of the concussion opened to such an extent as to cause the leakage from which she sunk and by which the loss complained of was produced. And this conclusion is not overcome by the circumstance that she was overhauled and caulked in. Milwaukee, and again examined by caulkers in June, and neither developed nor exhibited any evidence of unseaworthiness in the voyages or trips made by her during that part of the season preceding the loading of this coal. She was, without doubt, in a seaworthy condition during the time when she was engaged in making these preceding trips, and it was not until two-thirds of her cargo was placed upon her that such a condition of the hull was produced as permitted the leakage resulting in her sinking.
But when that was produced, it was the inherent defect of these square seams. They rendered her liable to such disaster, and when it arose from that defect it presented a cause of unseaworthiness*.
For she was unseaworthy within the fair significance of the term, as well as the legal authorities applicable to the case, when she could not take her cargo on board without the effort and process of doing so placing her in a sinking condition. To render her seaworthy she was required to be capable of receiving her cargo in the ordinary manner of lading it, without material detriment to herself, and proceeding with it upon her voyage. 2 Parson’s Maritime Law, page 132; 1 Philips on Insurance (3d ed.), page 382. Where the result of the authorities is stated that “to render a ship seaworthy, it must be staunch and of sound materials, or rather it must be sufficiently staunch and sound for the service or use intended by the insurance.”1 She must, in other words, be sufficiently strong and secure *717 to endure the ordinary strains and exigencies to which in the course of her employment she may be subjected. That this propeller was not in this condition at the time when the coal was being laden upon her, is not only evident from the testimony of the witnesses, to which reference has been made, but from the further fact that she filled so rapidly with water when she was subjected to no further jarring or straining than is ordinarily encountered and than she herself previously sustained in taking on cargoes of coal.
Where a vessel soon after leaving port, and before she has encountered any unusual strain or peril, foundered at sea, the presumption has been entertained that she was unsea worthy at the time of the commencement of the voyage. Talcot v. Com, Ins. Co., 2 Johns., 124; Walsh v. Washington Ins. Co., 32 N. Y., 436, 437; Van Wickle v. Mechanics’, etc., Ins. Co., 97 N. Y., 350.
The presumption has been adopted because it is the reasonable inference to be adduced from that state of facts, and it seems to be as applicable to the case of a vessel sinking at her dock while taking on her cargo in the ordinary manner as to one that in this way founders after the commencement of her voyage. The presumption in each case is alike, that the vessel could not be seaworthy, otherwise by the mere effect of taking her cargo on board she would not have been placed in such a leaking condition as to be incapable of being prevented from sinking by the action of five large pumps.
The only inference which is supported by the facts is that this condition was the result of her unseaworthiness at the time.
The oakum previously used to fill the square seams in her hull had become loosened by her previous employment to such an extent as in part to be removed from the seams, and in part to admit the flowage of water through them, notwithstanding its presence, in such quantities as to fill and sink the steamer. And that was a loss from unseaworthiness and by the express language of the policy excepted the liability incurred under its preceding language. The case is not one of a failure to comply with an express or implied warranty of seaworthiness. If it were it would necessarily be different in the result, for such a warranty relates to the condition of the ship at the time when the risk takes effect under the terms of the policy. Patrick v. Hallett, 1 Johns., 241; American Insurance Co. v. Ogden, 15 Wend., 532; Stephenson v. Piscataqua Insurance Co., 54 Maine, 55, 73-4.
And when the warranty has been observed and performed there the failure of the insured to preserve the ship in a sea *718 worthy condition is not a condition precedent to a recovery under the policy.
There is, it is true, an implied obligation that the ship shall be continued in a seaworthy condition, but the obligation would not be such as to exonerate the insurer from liability in a case of this description where the unseaworthy condition of the ship should be developed by an unseen and and undiscovered infirmity. What the law would require in such a case to comply with the obligation resting upon the assured would be the use of diligence in the observance of the condition of the ship and the restoration of any defect within a reasonable time after the development of its existence and knowledge of that fact could be obtained by the assured. Jones v. Ins. Co., 2 Wall., Jr., 278; Small v. Gibson, 3 Eng. Law and Eq., 290; Capen v. Washington Ins. Co., 12 Cush., 517; Hollingsworth v. Brodrick, 8 Law Journal, N. S., Queen’s Bench, 80; Copeland v. New England Ins. Co., 2 Met., 432.
But the case now to be decided does not depend upon and is not relieved by anything contained in these authorities or supported by this principle, for it is not that of an alleged failure to observe and perform such an obligation, but it rests upon a plain and distinct exception from the liability of the defendant under the policy of a loss arising out of any inherent defect of the propeller or any other unseaworthiness. This was a loss, the immediate cause of which was an inherent defect and constituting unseaworthiness, and for that the company, by its policy, has stipulated that it should not be liable. The case, accordingly, has not been made out, and judgment must be directed in favor of the defendant, the decision to be settled after service on and notice to the plaintiff’s attorneys.