LINDGREN, ADMINISTRATOR, *v.* UNITED STATES ET AL.

No. 25.   Argued October 25, 28, 1929.—Decided February 24, 1930.

Messrs. *D. Arthur Kelsey, pro hac vice,* by special leave of Court, and *Jacob L. Morewitz,* with whom *Messrs. L. B. Cox* and *R. Arthur Jett* were on the brief, for petitioner.

Mr. *Claude R. Branch,* Special Assistant to the Attorney General, with whom *Solicitor General Hughes, Assistant Attorney General Farnum* and *Mr. J. Frank Staley* were on the briefs, for the United States.

MR. JUSTICE SANFORD delivered the opinion of the Court.

This case depends upon the construction and effect of § 33 of the Merchant Marine Act of 1920,[1] which amended § 20 of the Seamen's Act of 1915[2] so as to provide:

" That any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal repre-

[1] 41 Stat. 988, c. 250; U. S. C., Tit. 46, § 688.
[2] 38 Stat. 1164, c. 153.

sentative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. . . ."

By this Act, as heretofore construed by this Court, the prior maritime law of the United States was modified by giving to seamen injured through negligence the rights given to railway employees by the Federal Employers' Liability Act and its amendments, and permitting these new and substantive rights to be asserted and enforced in actions *in personam* against the employers in federal and state courts administering common law remedies, or in suits in admiralty in courts administering maritime remedies. *Panama R. R. Co.* v. *Johnson,* 264 U. S. 375; *Engel* v. *Davenport,* 271 U. S. 33; *Panama R. R.* v. *Vasquez,* 271 U. S. 557; *Baltimore S. S. Co.* v. *Phillips,* 274 U. S. 316; *Pacific S. S. Co.* v. *Peterson,* 278 U. S. 130.

The Federal Employers' Liability Act,[3] which was incorporated in the Merchant Marine Act by reference, related to the liability of common carriers by railroad to their employees in interstate and other commerce, as specified. Sec. 1 provided that every such carrier " shall be liable in damages " to any employee suffering injury, " or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." By

---

[3] 35 Stat. 65, c. 149; U. S. C., Tit. 45, § 51.

this section, if the injury to the employee results in death his personal representative—while not given any right of action in behalf of the estate—is invested, solely as trustee for the designated survivors, with the right to recover for their benefit such damages as will compensate them for any pecuniary loss which they sustained by the death. See *St. Louis & Iron Mtn. Ry.* v. *Craft*, 237 U. S. 648, 656; *C. B. & Q. R. R.* v. *Wells-Dickey Co.*, 275 U. S. 161, 163. And if the employee leaves no survivors in any of the classes of beneficiaries alternatively designated, it necessarily follows that the personal representative can not maintain any action to recover damages for the death, since there is no beneficiary in whose behalf such an action can be brought.

In 1926, Barford, a seaman employed as third mate on a merchant vessel owned by the United States—then lying at the port of Norfolk, Virginia, in a floating drydock of Colonna's Shipyard, Inc., in which it was being reconditioned—while working in a lifeboat swinging on the vessel's davits, was thrown on the dock by the sudden release of one end of the lifeboat and instantly killed. Lindgren, the administrator of his estate, proceeding under the Suits in Admiralty Act,[4] filed a libel *in personam* against the United States in the Federal District Court for Eastern Virginia to recover damages for his death.[5] The libel declared specifically " in a cause of tort and death by wrongful act"; alleged that Barford's death was occasioned by negligence and wrongdoing on the part of the United States, its officers, servants, and employees in respect to the fastening of the lifeboat and various other matters; and averred that the libellant, as administrator of Bar-

---

[4] 41 Stat. 525, c. 95; U. S. C., Tit. 46, c. 20.

[5] The Shipyard was also impleaded as a co-defendant; but at the hearing in the District Court, pursuant to a concession made by counsel for the administrator, the libel was dismissed as against it. This is not here in question.

ford's estate, was entitled to recover, " for and on behalf of the decedent's dependents and heirs," damages for his death. It did not allege, however, that Barford left surviving him either a widow, child, or parent, or any next of kin dependent upon him; nor that his death was caused by unseaworthiness of the vessel.

The United States unsuccessfully excepted to the libel on the ground that it "failed to state a cause of action," and then answered on the merits, averring, *inter alia,* that in any event it would not be liable to damages in excess of the proved dependency of such dependents as Barford might have left surviving him.

At the hearing it was not shown that Barford left any survivor in any of the classes designated as beneficiaries by the Federal Employers' Liability Act; there being no evidence that his heirs, a nephew and niece, were dependent upon him.

The District Court found that Barford's death was caused by the negligent installation of the releasing gear in the lifeboat, which permitted it to fall and made this device unseaworthy; held that, although the administrator could not recover under the Merchant Marine Act, applying the rule under the Federal Employers' Liability Act, since the surviving nephew and niece were not dependent, he was entitled to recover under the Virginia Death Statute,[6] which provided that a personal representative might maintain a suit for damages on account of the death of a person caused by the wrongful act of another—under which dependency was not a necessary condition and the probable earnings of the decedent might be shown; and fixed the damages under this statute at $5,000, for which the administrator was given a decree against the United States.

On appeal the Circuit Court of Appeals held that the right of action given to the personal representative of a

---

[6] Code of Virginia, § 5786, *et seq.*

seaman by the Merchant Marine Act for personal injury resulting in death, was exclusive and superseded the Virginia Death Statute; and since, under the provisions of the Federal Employers' Liability Act incorporated in the Merchant Marine Act, there could be no recovery, reversed the decree of the District Court and dismissed the libel. 28 F. (2d) 725.

It is clear that, as Barford left no survivors designated as beneficiaries by the Federal Employers' Liability Act, the administrator was not entitled to maintain an action for the recovery of damages under the provisions of that Act, made applicable in case of the death of a seaman by § 33 of the Merchant Marine Act. But while this is not questioned by the administrator, he urges that the right of action given the personal representative by the Merchant Marine Act is not exclusive, and that it neither supersedes the right of action given him by the death statute of the State in which the injury was sustained, nor precludes his right to recover indemnity for the death under the old admiralty rules on the ground that the injuries were occasioned by the unseaworthiness of the vessel. These contentions can not be sustained.

1. Prior to the adoption of the Merchant Marine Act the general maritime law of the United States did not authorize any recovery of damages or indemnity for the death of a seaman, whether the injury was caused by the negligence of the owner or other members of the crew or the unseaworthiness of the vessel. See *The Harrisburg*, 119 U. S. 199; *The Osceola*, 189 U. S. 158, 175; *Western Fuel Co.* v. *Garcia*, 257 U. S. 233, 240. In this situation it was held, in the absence of any legislation by Congress, that where a seaman's death resulted from a maritime tort on navigable waters within a State whose statutes gave a right of action on account of death by wrongful act, the admiralty courts could entertain a libel *in personam* for the damages sustained by those to whom such right

was given.  *Western Fuel Co.* v. *Garcia, supra,* 242; *Great Lakes Co.* v. *Kierejewski,* 261 U. S. 479, 480.[7]  But, as said by the Circuit Court of Appeals, such statutes " were not a part of the general maritime law " and were recognized only because Congress had not legislated on the subject.

By the Merchant Marine Act, however, the prior maritime law was modified by giving to personal representatives of seamen whose death had resulted from personal injuries, the right to maintain an action for damages in accordance with the provisions of the Federal Employers' Liability Act.  It is plain that the Merchant Marine Act is one of general application intended to bring about the uniformity in the exercise of admiralty jurisdiction required by the Constitution, and necessarily supersedes the application of the death statutes of the several States. This has been determined in two prior decisions of this Court.  In *Panama Railroad Co.* v. *Johnson, supra,* 392— the pioneer case in which the constitutionality and effect of § 33 of the Merchant Marine Act were considered and dealt with at length—in answering the assertion that the Act departed from the constitutional requirement that it should be coextensive with and operate uniformly in the whole of the United States, the Court said: " The statute extends territorially as far as Congress can make it go, and there is nothing in it to cause its operation to be otherwise than uniform.  The national legislation respecting injuries to railway employees engaged in interstate and foreign commerce which it adopts has a uniform operation, and neither is nor can be deflected therefrom by local statutes or local views of common law rules.  *Second Employers' Liability Cases,* 223 U. S. 1, 51, 55; *Baltimore & Ohio R. R. Co.* v. *Baugh,* 149 U. S. 368, 378.  Of course that legislation will have a like operation as part of this

---

[7] In each of these cases the death had occurred before the adoption of the Merchant Marine Act; in the *Garcia* case in 1916 (238); and in the *Kierejewski* case in 1919 (see 280 Fed. 125, 126).

statute." And recently we said in *Northern Coal Co.* v. *Strand,* 278 U. S. 142, 147: " We think it necessarily follows from former decisions that by the Merchant Marine Act—a measure of general application—Congress provided a method under which the widow of [a seaman] might secure damages resulting from his death, and that no state statute can provide any other or different one." To the same effect is *Patrone* v. *Howlett,* 237 N. Y. 394, 397, in which the court said that the administrators of a seaman killed in the course of his employment, " did not have a remedy under the state act after the [Merchant Marine] Act occupied the field and became a part of the general maritime law."

These decisions are in accordance with the long settled rule that since Congress by the Federal Employers' Liability Act took possession of the field of the employers' liability to employees in interstate transportation by rail, all state laws on the subject are superseded. *Second Employers' Liability Cases, supra,* 54; *Seaboard Air Line* v. *Horton,* 233 U. S. 492, 501; *New York Central R. R. Co.* v. *Winfield,* 244 U. S. 147, 149; *Erie R. R. Co.* v. *Winfield,* 244 U. S. 170, 172; and cases cited. In the *Second Employers' Liability Cases, supra,* 54, this Court said: "True, prior to the present act the laws of the several States were regarded as determinative of the liability of employers engaged in interstate commerce for injuries received by their employés while engaged in such commerce. But that was because Congress, although empowered to regulate that subject, had not acted thereon, and because the subject is one which falls within the police power of the States in the absence of action by Congress. *Sherlock* v. *Alling,* 93 U. S. 99; *Smith* v. *Alabama,* 124 U. S. 465, 473, 480, 482; *Nashville, &c. Railway* v. *Alabama,* 128 U. S. 96, 99; *Reid* v. *Colorado,* 187 U. S. 137, 146. The inaction of Congress, however, in no wise affected its power over

46

the subject. *The Lottawanna,* 21 Wall. 558, 581; *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196, 215. And now that Congress has acted, the laws of the States, in so far as they cover the same field, are superseded, for necessarily that which is not supreme must yield to that which is. *Gulf, Colorado and Santa Fe Railway Co.* v. *Hefley,* 158 U. S. 98, 104; *Southern Railway Cc.* v. *Reid,* 222 U. S. 424; *Northern Pacific Railway Co.* v. *Washington,* 222 U. S. 370."

In *New York Central R. R. Co.* v. *Winfield, supra,* 150, 153, the Court furthermore held that although the Federal Employers' Liability Act " does not require the carrier to respond for injuries occurring where it is not chargeable with negligence," this is " because Congress, in its discretion, acted upon the principle that compensation should be exacted from the carrier where, and only where, the injury results from negligence imputable to it "; that the Act " is as comprehensive of injuries occurring without negligence, as to which class it impliedly excludes liability, as it is of those as to which it imposes liability " and " is a regulation of the carriers' duty or obligation as to both "; and that " the reasons which operate to prevent the States from dispensing with compensation where the act requires it equally prevent them from requiring compensation where the act withholds or excludes it." This was followed and approved in *Erie R. R. Co.* v. *Winfield, supra,* 172, in which the Court said that the Act " establishes a rule or regulation which is intended to operate uniformly in all the States, as respects interstate commerce, and in that field it is both paramount and exclusive."

In the light of the foregoing decisions and in accordance with the principles therein announced we conclude that the Merchant Marine Act—adopted by Congress in the exercise of its paramount authority in reference to the maritime law and incorporating in that law the provisions of the Federal Employers' Liability Act—establishes as

a modification of the prior maritime law a rule of general application in reference to the liability of the owners of vessels for injuries to seamen extending territorially as far as Congress can make it go; that this operates uniformly within all of the States and is as comprehensive of those instances in which by reference to the Federal Employers' Liability Act it excludes liability, as of those in which liability is imposed; and that, as it covers the entire field of liability for injuries to seamen, it is paramount and exclusive, and supersedes the operation of all state statutes dealing with that subject.

It results that in the present case no resort can be had to the Virginia Death Statute, either to create a right of action not given by the Merchant Marine Act, or to establish a measure of damages not provided by that Act.

2. Nor can the libel be sustained as one to recover indemnity for Barford's death under the old maritime rules on the ground that the injuries were occasioned by the unseaworthiness of the vessel. Aside from the fact that the libel does not allege the unseaworthiness of the vessel and is based upon negligence alone, an insuperable objection to this suggestion is that the prior maritime law, as herein above stated, gave no right to recover indemnity for the death of a seaman, although occasioned by unseaworthiness of the vessel. The statement in *The Osceola, supra,* 175, on which the administrator relies, relates only to the seaman's own right to recover for personal injuries occasioned by unseaworthiness of the vessel, and confers no right whatever upon his personal representatives to recover indemnity for his death. Apparently for this reason the words "at his election,"—which appear in the first clause of § 33 of the Merchant Marine Act, relating to the personal right of action of an injured seaman, and, as held in *Pacific Co.* v. *Peterson, supra,* 139, gave him, as alternative measures of relief, "an election between the right under the new rule to recover compensatory damages for injuries caused by negligence, and

the right under the old rules to recover indemnity for injuries occasioned by unseaworthiness "—were omitted from the second clause of § 33 of the Merchant Marine Act, relating to the right of the personal representative to recover damages for the seaman's death, since there was no right to indemnity under the prior maritime law which he might have elected to pursue. And, for the reasons already stated, and in the absence of any right of election, the right of action given the personal representative by the second clause of § 33 to recover damages for the seaman's death when caused by negligence, for and on behalf of designated beneficiaries, is necessarily exclusive and precludes the right of recovery of indemnity for his death by reason of unseaworthiness of the vessel, irrespective of negligence, which cannot be eked out by resort to the death statute of the State in which the injury was received.

3. It is suggested in argument that if the statutes of the several States are superseded by the Merchant Marine Act it would follow that the Death on the High Seas Act,[8] which had been previously adopted, would likewise be superseded. That Act, however, concededly has no application here, since Barford's death did not occur on the high seas but within the territorial limits of the State of Virginia. We have no occasion to consider its scope and effect here and do not determine what effect, if any, the Merchant Marine Act has upon it; and nothing stated in this opinion is to be considered as having any reference to those questions. Nor do we consider or determine the effect of the Federal Employees Compensation Act,[9] upon which, although incidentally referred to in argument, neither the administrator nor the United States here relies.

The decree is                                        *Affirmed.*

---

[8] 41 Stat. 537, c. 111, U. S. C., Tit. 46, c. 21.

[9] 39 Stat. 742, c. 458, U. S. C., Tit. 5, c. 15.