### RENEW v. UNITED STATES et al.
### No. 411.

District Court, S. D. Georgia.

June 29, 1932.

Clement E. Dunbar and W. D. Lanier, both of Augusta, Ga., for libelant.

Chas. L. Redding, U. S. Dist. Atty., of Savannah, Ga.

Lawton & Cunningham, of Savannah, Ga., for Fleet Corporation.

BARRETT, District Judge.

Byron Renew was in June of 1930 a seaman on the steamship Quaker City, then lying in the territorial and navigable waters of the United States of America and of the state of Pennsylvania at Philadelphia. At that time said vessel belonged to the United States of America and was operated by the United States Shipping Board Fleet Corporation. Complaint was brought against the United States of America and said Fleet Corporation under the Suits in Admiralty Act (46 USCA §§ 741–752), and it was alleged that the death of said Renew was caused by certain acts of negligence, a part of which constituted unseaworthiness and a part of which were the negligent acts of those operating the vessel.

This action is brought by the administratrix of said Byron Renew and alleges: "That libelant is one of three next of kin, comprising all of the next of kin, left in life at his death by said Byron Renew, the said three being all sisters of his, but the two other than libelant being married and both now residents of the State of South Carolina and neither of them then or now dependent upon the said Byron Renew. That libelant was and is an unmarried woman and was, at the time of his death, dependent upon the said Byron Renew, to the amount and in the sum of Fifteen Dollars ($15.00) or more per month, or One Hundred and Eighty Dollars ($180.00) or more per year. That the said Byron Renew at his death left him surviving no father or mother and no child or descendant of a child and no wife, he never having been married. That at the aforesaid date of his death he was of the age of nineteen years." The issue is one between libelant and the United States.

The matter is now before the court on exceptions, the first and most important of which is thus expressed: "Because an Administratrix cannot proceed under the Suits in Admiralty Act to recover damages for the death of a seaman resulting from injury sustained on the navigable waters within the territorial limits of a State."

Condensed in statement, the following is the argument presented by defendant to sustain such exception:

Suits against the Sovereign, the United States, can be maintained only to the extent that it gives its consent thereto and any statute claimed to give such consent must be

strictly construed. Schillinger v. United States, 155 U. S. 163, 15 S. Ct. 85, 39 L. Ed. 108; Eastern Transportation Co. v. United States, 272 U. S. 675, middle of page 686, 47 S. Ct. 289, 71 L. Ed. 472.

The language of the statute under which this proceeding is sought is as follows: "In cases where if such vessel were privately owned or operated, or if such cargo were privately owned and possessed, *a proceeding in admiralty* could be maintained at the time of the commencement of the action herein provided for, a libel in personam may be brought against the United States or against such corporation, as the case may be, provided that such vessel is employed as a merchant vessel or is a tugboat operated by such corporation." Title 46, § 742, USCA, approved March 9, 1920: Emphasis is given to the words " * * * a proceeding in admiralty."

At the time of the adoption of the said Suits in Admiralty Act, March 9, 1920, there was no right of recovery by reason of the death of a seaman, whether it was negligence constituting unseaworthiness or negligence of the master or members of the crew.

On March 30, 1920, there was enacted a right of recovery for the wrongful death of a sailor "occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States." Title 46, § 761, USCA. This is not, of course, applicable in this case.

While not a part of the admiralty or maritime jurisdiction, inasmuch as Congress had not acted, suits had been permitted under the state homicide acts when death occurred on the territorial waters of the United States, but such right was not a part of the maritime law. Lindgren v. United States, 281 U. S. 38, 50 S. Ct. 207, 74 L. Ed. 686.

On June 5, 1920, amending the act of 1915, there was enacted the Merchant Marine Act 1920 (section 33), embodied in title 46, § 688, USCA, reading as follows: "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located." This act nullified the previous existing right of suit under the state homicide statutes. Lindgren v. U. S., supra.

The Merchant Marine Act gave to a seaman who had been injured a right to recover, if owner and crew were without wrong, maintenance, cure, and wages, and, if wrongfully injured, "at his election, maintain an action for damages at law with the right of trial by jury," or to proceed in admiralty without a trial by jury; but such election did not apply in the case of death. It is urged that the employment of the language "at his election" in the first portion of the sentence, where applicable to injuries, and their omission in the second portion of the sentence, where applicable to death, is significant and controlling, and that the only right which existed for the recovery for a death in territorial waters on account of a wrong of the ship or owner was to "maintain an action for damages at law with the right of trial by jury"; and there is no question but that the language in the Lindgren Case, on pages 47 and 48 of 281 U. S., 50 S. Ct. 207, 74 L. Ed. 686, warrants the aforesaid contention.

Therefore it results, is the argument, that the only right being an "action at law," it is not "a proceeding in admiralty," and therefore this proceeding under the Suits in Admiralty Act cannot be sustained.

It is admitted that the result of this reasoning leads to the conclusion that the United States has permitted and does now permit a suit against it under the said Suits in Admiralty Act because of the wrongful injury of a seaman, but does not permit a recovery in behalf of the widow or children of a seaman wrongfully killed.

The interesting differentiation presented invites to a full review of the applicable law and especially to ascertain the meaning of "a proceeding in admiralty," and further just what were the rights given in the event of death by the Merchant Marine Act.

The Constitution of the United States, article 3, § 2, dealing with judicial power, is as far as applicable as follows: "The judicial Power shall extend * * * to all

Cases of admiralty and maritime Jurisdiction. * * *"

There is no question but that originally the words "admiralty" and "maritime" were not identical in meaning. Benedict on Admiralty (5th Ed.) § 5. The reason for the use of both terms in giving this jurisdiction is there explained. There is no question that there was but one jurisdiction given by this phrase and it is assuming no risk to say that in innumerable cases authors, judges, and Congress have indifferently described this jurisdiction by either the employment of one or the other of said terms or both. In Bouvier's Law Dictionary, 3d Revision, p. 2093, we find the following (based upon a quotation from Benedict on Admiralty, and also referring to De Lovio v. Boit, 2 Gall. 398, Fed. Cas. No. 3,776) : "The jurisdiction of the admiral, and the administration of the admiralty law proper—the local maritime law—as it became a judicial function, has thus passed into the hands of the courts, and they now administer the admiralty law and the maritime law both of which are sometimes called the admiralty law, sometimes the maritime law, and sometimes the admiralty and maritime law; and cases arising under them are cases of admiralty and maritime jurisdiction." In the very Lindgren Case, supra, we find an illustration of this, where the court, on page 43 of 281 U. S., 50 S. Ct. 207, 210, 74 L. Ed. 686, says: "Prior to the adoption of the Merchant Marine Act the general maritime law of the United States did not authorize any recovery of damages or indemnity for the death of a seaman. * * *" And on the very next page is this expression: "It is plain that the Merchant Marine Act is one of general application intended to bring about the uniformity in the exercise of admiralty jurisdiction required by the Constitution. * * *" Can there be any question but that Mr. Justice Sanford had but one jurisdiction in mind when in the one sentence he used "general maritime law" and in the other "in the exercise of admiralty jurisdiction"? Is it in reason possible, in view of the foregoing manifest meaning of the language and more especially in view of the callously unjust result that would follow, that the Congress of the United States was solicitous about preserving a right for an injury and denying appropriate aid to the widow and the fatherless? What possible reason could there be why such a result was intended? And there is no strain in giving to the language "a proceeding in admiralty" a meaning equivalent to any proceeding in the maritime law.

Despite the expressions in the Lindgren Case by Justice Sanford—which in my opinion are obiter—I with confidence reach the conclusion that the words "a proceeding in admiralty" have the meaning of any proceeding under the admiralty and maritime law.

In order to support the argument of defendant it is not only necessary to give to the aforesaid language "a proceeding in admiralty" this limited meaning, but it is also necessary to show that the right of action by reason of the death of a seaman is wholly an action at law and is not one within the scope of the maritime and admiralty jurisdiction of the United States.

First let us examine the language of the Merchant Marine Act with a critical eye and ascertain whether there was any different right given for an injury or for death. The first clause gives to the injured seaman a right to "maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply." The second clause gives a right in case of death to "maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable." It is not to be overlooked that in the first clause immediately prior to "maintain" is the language "at his election" and that such language is not repeated in the second clause. That does not mean that it is not applicable to the second clause. What reason could there be to provide an election to enforce the identical right, namely, "an action for damages at law," and deny such election to enforce the right expressed in the identical language in the case of death?

Again am I not unmindful of the definite language of Justice Sanford to the effect that in the case of death the right of election did not exist.

Unless I entirely misconceive Panama Railroad Co. v. Johnson, 264 U. S. 375, 44 S. Ct. 391, 68 L. Ed. 748, if this language in the Merchant Marine Act, in case of death, gives only the right of action at law, it is unconstitutional as invading and impairing the admiralty and maritime jurisdiction. The language of the headnote (5-c) in the Panama Case is: "The statute is not to be

construed as restricting enforcement of the new rights to actions at law, (which might mean an unconstitutional encroachment on the maritime jurisdiction,) but as allowing the injured seaman to assert his right of action under it either on the common law side, with right of trial by jury, or on the admiralty side, with trial to the court." And in the body of the opinion we find this (pages 389, 390 of 264 U. S., 44 S. Ct. 391, 395, 68 L. Ed. 748): "But it is insisted that, even if the statute brings those rules into that law, it is still invalid in that it restricts the enforcement of rights founded on them to actions at law, and thereby encroaches on the admiralty jurisdiction intended by the Constitution. It must be conceded that the construction thus sought to be put on the statute finds support in some of its words, and also that if it be so construed a grave question will arise respecting its constitutional validity. But, as this court often has·held, 'a statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score.' "

In my opinion the Merchant Marine Act gives an election in the case of death to the same extent that it does in the case of injury.

The result is that this proceeding sets up a right which could be properly designated "a proceeding in admiralty," because the right given in the event of death by said Merchant Marine Act is just as much a part of the admiralty and maritime law of our country as is the right of a seaman to recover for injuries.

This exception is overruled.

The second exception is: "Because an administratrix cannot sue as such for her own benefit alone and not for the benefit of the other heirs-at-law of the deceased." The Federal Employers' Liability Act (45 USCA §§ 51–59) is for the purposes indicated in said Merchant Marine Act made a part thereof, and this provides, among other things, that if there be no widow or husband or child or parents of the deceased, then the suit may be for the benefit of "the next of kin dependent upon such employee." Section 9 (45 USCA § 59). This suit tracks that provision.

This exception is overruled.

Exception 3 is: "Because the allegations of the libel are vague, indefinite and ambiguous, and libellant does not clearly and distinctly set forth a cause of action and put these respondents on notice thereof." This criticism is itself so indefinite that I cannot realize just what defect is complained of, and it is therefore overruled.

Exception 4 is: "Because the allegations of paragraph 6 of the libel are ambiguous in that these respondents are not put on notice whether libelant intends to proceed because of the unseaworthiness of the vessel or because of the negligence of her owners, Master and crew, and respondents pray that the libellant be required to elect between her remedies." My understanding of the law is that when an action is instituted by reason of alleged negligence it is appropriate to set forth all acts or omissions which would constitute either such carelessness as would create unseaworthiness or carelessness on the part of the master or crew in operating the vessel. It is the combination of all of the facts that gives the cause of action, and it would not be permitted to set forth as one cause of action the facts constituting unseaworthiness and as another cause of action the carelessness of the master and crew in operating the vessel. Baltimore Steamship Co. v. Phillips, 274 U. S. 316, 47 S. Ct. 600, 71 L. Ed. 1069, cited with approval in Pacific S. S. Co. v. Peterson, 278 U. S. 130, 138, 49 S. Ct. 75, 73 L. Ed. 220.

Exception 5 is as follows:

"Respondents further except to the allegations in paragraph 6 of the libel for the following reasons:

"(a) The circumstances surrounding the deceased's fall into the hatch, the hour at which he fell, where he was going and on what business he was engaged are not shown.

"(b) It is not alleged that Renew did not know or that he could not have known by the exercise of ordinary care that the hatch was open, unlighted and unguarded. The allegations to the effect that the hatch was not properly lighted are irrelevant and immaterial, since the libel shows on its face that the deceased fell into the hatch because he came into bodily contact with Edward Chambers.

"(c) The manner in which these respondents, or either of them, or the master and crew of the s/s 'Quaker City' were negligent is not alleged.

"(d) The allegations that the vessel was in a defective and unsafe condition are irrelevant and immaterial, there being no allegations in the libel showing that her defective and unsafe condition was due to negligence.

"(e) The allegations that the hatch was not properly lighted and guarded are irrelevant and immaterial, there being no allega-

tion to show that the failure to light and guard the hatch was a negligent failure.

"(f) The libel does not allege that these respondents, or either of them, failed to exercise reasonable diligence to furnish the deceased with a safe place in which to work.

"(g) The allegations in sub-paragraph E that deceased was improperly directed, expressly or impliedly, to work or to pass along by the hatch in question are ambiguous.

"(h) The allegations in sub-paragraph F do not show what the deceased and Edward Chambers were doing when they came into bodily contact, or the circumstances under which they came into bodily contact, or why it was necessary for the deceased to be so near to an open hatch that bodily contact with Chambers would precipitate him into the hatch, nor is it alleged whether deceased's fall into the hatch was caused or only contributed to by his coming into bodily contact with Chambers."

The exception to subparagraph E of paragraph 6 of the libel is sustained to the extent that there should be some allegation of what the owners and master did which warrants the charge that they were "improperly directing, expressly or impliedly, the said Byron Renew to work or to pass along by an unreasonable, defective and dangerous place."

The exception to subparagraph F of paragraph 6 of the libel is sustained because of the indefiniteness of the charge as to Edward Chambers, one of the crew, coming into contact with the said Renew.

Opportunity will be afforded libelant for a period of ten days from this date to file appropriate amendments in compliance with this judgment.

The other exceptions in the fifth exception are overruled.

Exception 6 is overruled.