## MOHAMED v. UNITED FRUIT CO.
### No. 610.

District Court, D. Massachusetts.
March 20, 1935.

Samuel B. Horovitz and B. A. Petkun, both of Boston, Mass., for plaintiff.

Raymond S. Wilkins, of Boston, Mass. (Palmer, Dodge, Barstow, Wilkins & Davis, of Boston, Mass., of counsel), for respondent.

BREWSTER, District Judge.

This libel in personam is brought against the owners of the steamer San Benito. There are two causes alleged, one for maintenance and cure under the admiralty law; the other for personal injuries under the Jones Act, 46 U.S.C.A. § 688.

### Statement of Facts.

The libelant shipped as fireman on the San Benito which, in May, 1934, was bound from Central American ports for Boston. The San Benito was a turbo-electric steamer using oil for fuel. It was part of the libelant's duty to remove and clean the strainers through which the oil was forced into the condensation chambers. On May 28, 1934, while cleaning one of these strainers, a small piece

of steel entered into the third, or ring finger of the libelant's right hand. This piece of steel was about one-eighth inch in length and had presumably been frayed from the head of the strainer when, due to maladjustment of parts, the nut which held the strainer in place had been screwed down upon it in some earlier operation. There is no evidence that any one on the vessel was aware of the defect or that there was any negligent failure to inspect. The engineer on the watch succeeded with some difficulty in extracting the metal sliver by using his fingernails. There was no bleeding and no indication that any ill consequences would follow, though, as a precaution, the engineer then, or soon afterwards, advised the libelant to see the steward. The vessel had no doctor on board. It only accomodated twelve passengers. It was equipped, however, with a medicine chest, and the captain was trained in first aid methods. The steward also could have supplied antiseptics had application been made to him. The libelant did nothing except wrap a clean cloth around the finger and continued with his work.

Two days later he complained of pain in the finger and was advised to treat it with poultice or hot applications. This was done and brought some relief. The engineer again advised the libelant to see the steward. The steward testified that he had no recollection of the libelant asking him for any treatment. The libelant continued to work, although the finger was giving him trouble. The engineer had bandaged it one or more times with clean antiseptic cloths.

Five days after the accident and two days before landing in Boston, the finger appeared to be swollen, discolored, and extremely painful. The libelant was then relieved from further duties on that trip.

On the 4th day of June, 1934, the San Benito arrived at Boston, and upon her arrival the libelant at once went to Dr. Crawford, the company's physician, who found indications of some serious infection, and to relieve the swelling and inflammation an incision was made and the wound properly dressed and bandaged. During the month of June the doctor gave such medical attention to the finger as the occasion required, making two or three incisions to relieve abscesses. The libelant was sent to a clinic for bak-

ing and massage at the expense of the libelee. He was last seen by the company's doctor on November 5. He was then cured, so far as possible without amputating the finger. This the libelant refused to have done.

By November 17, 1934, the libelant's disability did not prevent him from returning to his former employment. The incisions in the finger had made it impossible for the libelant to flex the injured finger at the first joint, and the doctors agreed that it would contribute to his convenience if the finger were amputated at the first joint. While this inability to flex the finger might be a slight handicap, it was demonstrated, during the course of the trial, that it did not prevent him from performing his duties as a fireman.

The libelant consulted an expert for the purpose of obtaining testimony for the trial and also expended $58.70 for medicine. With these exceptions the libelee has furnished all medicine and medical care and has paid for maintenance $10.50 a week from June 4 to November 17, 1934. During eight weeks of this period of maintenance, the libelant boarded with a practical nurse paying $15 per week. I find that the amount paid was reasonable and that the libelant was justified in adopting this boarding place during the early stages of convalescence. For these eight weeks I find that the libelant was entitled to receive for maintenance $15 per week, or $34 in excess of the amount already paid.

## Conclusions of Law.

█ First: As to the first count for cure and maintenance. I rule that the libelee will have fully performed its obligation with respect to cure when it has reimbursed libelant $58.70 expended for medicines. It is not liable for libelant's expenses incurred for expert testimony for use in the trial of the case; nor can he recover, under his claim for cure, the prospective expenses of amputating the finger. The Lizzie Frank (D.C.) 31 F. 477.

For maintenance, the libelee should pay $34 in excess of what has already been paid.

█ Second: As to liability for personal injuries under the Jones Act. It is settled that there can be no liability under this statute unless the libelant is

1002

able to establish negligence on the part of the libelee or its officers, agents, or employees, 45 U.S.C.A. § 51; Lindgren v. United States, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686; Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069; Panama R. Co. v. Vasquez, 271 U.S. 557, 559, 46 S.Ct. 596, 70 L.Ed. 1085; Pittsburgh S. S. Co. v. Palo, 64 F.(2d) 198 (C.C.A.6), and the burden is upon the libelant to establish such negligence.

It is alleged that the libelee was negligent in failing to provide proper equipment for the work which the libelant was doing when he received the injury. This allegation is not sustained by the evidence. The proved facts do not warrant a finding that the employees of the libelee had any knowledge of the defect in the strainer or were negligent in failing to inspect. · Therefore, the vessel cannot be charged with any negligence regarding the primary cause of the injury.

The only question which merits consideration is whether the engineer was negligent in attempting to extract the steel from the finger and in his course of conduct after the accident. I do not think the court would be warranted in holding the engineer legally responsible for the consequences that ensued. There was undoubtedly septic poisoning, but its source is purely a matter of conjecture. There was nothing in the nature or extent of the injury that would lead a reasonably prudent man to expect that any serious result would follow, but out of caution the libelant was told to see the steward who had antiseptic which could have been used, and which might have prevented the serious result. If the libelant had exercised a higher degree of prudence, the infection probably would not have occurred. He had abundant opportunities to take the usual precautions and neglected to avail himself of them. The suggestion that his condition required landing at some port before reaching Boston is without merit. It may be that his injury was aggravated by the continual work, but I do not find that he was compelled against his wishes to do any work after it became known that the injured finger was giving him trouble. It is a fair inference that neither the libelant nor the engineer anticipated that the slight wound would amount to anything, and it was not until a few days before the vessel reached Boston that the contrary became apparent.

In conclusion, the libelant may recover $92.70 on the first cause of action. The libelant is not entitled to recover on the second cause of action.