**SPERBECK v. A. L. BURBANK & CO., Inc.**

**Civ. 42-39.**

United States District Court
S. D. New York.
Jan. 25, 1950.

Jacob Rassner, New York City, for plaintiff.

Hanrahan & Dougherty, New York City, Michael Hanrahan, New York City, for defendant.

RIFKIND, District Judge.

The action was commenced by a seaman against his employer for injuries negligently inflicted and for maintenance and cure. The seaman died before trial and the administratrix, his widow, was substituted as party-plaintiff.

The S.S. John Mason was tied to one of the Manhattan docks. Apparently it was not in active operation for her crew consisted solely of a mate and watchman for each of three watches. Sperbeck was night-mate, his hours of duty beginning at 5 o'clock. The ship was cold and no one lived aboard her. Before March 3, 1947, access to the ship from the dock was obtained by descending a ladder from the dock to a float which lay between the pierhead and the ship and ascending a ladder from the float to the deck of the ship.

The events from which the defendant's negligence is inferred by plaintiff occurred on March 3, 1947. On that day, at about 4:30 o'clock in the afternoon, Sperbeck arrived on board. That was some little time before he was on duty. He found the day-mate and his gangway watch engaged in throwing a gangway extending from the gunwale to the roof of the pier shed, their object being to facilitate access to and from the ship. This gangway was of wooden construction, between 15 and 20 feet long and about three feet wide, with iron stanchions along each of its sides. Sperbeck voluntarily assisted in the operation. For some time prior thereto Sperbeck had been suffering from heart disease. Nothing untoward occurred, however, until March 17th when Sperbeck suffered a heart attack and was taken off the ship. For a time he was hospitalized and for nine months he received out-patient treatment. More than a year later, on April 28, 1948, he died of heart disease. He was then close to 60 years of age.

The only possible basis for an inference of negligence is to be found in a deposition of Sperbeck taken on August 12, 1947. He there claimed that at the time he assisted in the manipulation of the gangway, one of the other men engaged in the operation slipped, that the bulk of the weight of the load fell upon him and that he immediately

felt a sharp pain across his chest. I do not credit the story. I do not credit it, first, because he is manifestly an interested witness. He is contradicted by the two other employees who cooperated in the enterprise. He never reported any such incident at any time until the service of the complaint on June 9, 1947. On admission to the hospital, on March 18, 1947, he gave no history of any violent contact with the gangplank nor indeed did he attribute his difficulty to anything which occurred on March 3, 1947. He did attribute his heart attack of March 17, 1947 to other unrelated and independent causes.

It is undisputed that the deceased as an officer on board the John Mason was not required to do the manual labor involved in shifting the gangplank. It is also undisputed that no one else on board the John Mason had authority to direct him to do so. Consequently, even if we assume that the employer had knowledge of Sperbeck's heart condition, still no basis for the inference of negligence is discovered.

It is suggested, however, that the defendant was negligent in failing to supply adequate personnel necessary to move the gangplank. The ship was idle and, assuming for the moment that it was in navigation, it was certainly not in active operation. There is not the slightest suggestion that the defendant was requested to supply additional manpower or that it could have foreseen the need of any. Nor is the plaintiff assisted by the suggestion that, independent of negligence, the ship was unseaworthy by reason of the lack of an adequate crew and that plaintiff might recover thereon under the maritime law. Not only is there no basis in fact for such an accusation, but the maritime law afforded no remedy for death occasioned by unseaworthiness. Lindgren v. U. S., 1930, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686. The afterthought contributed by plaintiff that, by reason of the icy conditions on the deck, the defendant failed to supply the deceased with a safe place to work, is likewise not helpful to plaintiff since that condition in no way contributed to the plaintiff's illness or death.

Plaintiff has likewise failed to establish that there was any causal relation between the events of March 3, 1947, and the injury or the death. True, the plaintiff's physician testified that the strain which Sperbeck testified he sustained on March 3, 1947, could have aggravated the pre-existing heart condition and was a competent producing cause of the subsequent illness and death. The thin line of inference that it was in fact the cause of such subsequent developments is broken by the circumstances that plaintiff made no complaint of the events of March 3, 1947, did not upon admission to the hospital refer to those events as having been the origin of his difficulties and that the doctor testified that, absent such events, the condition of the deceased and his subsequent death were nevertheless completely explicable.

I find therefore that the plaintiff has not established unseaworthiness, nor negligence on part of defendant nor a causal connection between the events of March 3rd and the subsequent illness and death of the decedent. Plaintiff cannot recover indemnity.

We come now to the claim for maintenance and cure. The first question is whether Sperbeck's status was such as to entitle him to maintenance and cure. Defendant, in its brief, has listed a number of circumstances calculated to throw doubt upon Sperbeck's status, as a member of the crew. The evidence, however, is very thin. The mere fact that the vessel was temporarily idle, awaiting repairs, is insufficient to disqualify a seaman, employed aboard her, from claiming maintenance and cure. That he slept and ate ashore while the ship was tied to the pier, is not conclusive against him. Sullivan v. U. S., 2 Cir., 179 F.2d 924. The evidence is that Sperbeck was employed as a ship's officer, that the ship had been under way a few days before March 3, 1947, and again shortly thereafter. Without more, that conferred upon Sperbeck the qualifying status. Not enough has been shown to impair it.

The second question is whether the claim for maintenance and cure abated on Sperbeck's death. No answer to this ques-

tion has been provided by the authorities. Counsel inform me that diligent search has not discovered a case directly in point. The argument has therefore taken a turn toward the classification of the claim for maintenance and cure as contractual, delictual or belonging to an independent category. Of that, too, there is no clearcut determination. When the legal materials are as plastic as they are on this question the forms of logical deduction are illusory since the desired conclusion is surreptitiously introduced into the premises. It may as well, therefore, be done candidly. Preferring to hold that the claim for maintenance and cure does not abate at the death of the seaman entitled thereto, I choose to classify the claim pro hac vice as contractual. Authority for my choice I find in the language of Cortes v. Baltimore Insular Line, 1932, 287 U.S. 367, 371, 53 S.Ct. 173, 174, 77 L.Ed. 368, "Contractual it is in the sense that it has its source in a relation which is contractual in origin * * *."

Defendant argues that, even if the right is contractual it abates on the death of the seaman and it supports its argument by the analogy that the maritime law afforded no remedy for *death* caused by unseaworthiness. Lindgren v. U. S., 1930, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686. That case, however, did not hold that contractual obligations owing to a seaman abated on his death. Nor did Cortes v. Baltimore Insular Line, supra, so hold. In that case Mr. Justice Cardozo said that under maritime law "the remedy for the injury ends with his death." The injury he spoke of was the tort of failing to give maintenance and cure and *thereby causing or aggravating an illness.* Such is not the case at bar.

 . The action for maintenance and cure includes as one of its elements a claim for wages to the end of the seaman's contract. Benedict in Admiralty, 6th Ed. 253. I know of no reason why the representative of a seaman who dies after the termination of his contract should not be able to recover his unpaid wages; and if this item of the claim of a sick or injured seaman survives, there is at least plausibility in the conclusion that the other items making up a seaman's right to maintenance and cure should likewise survive.

I conclude that the claim has not abated.

The amount thereof is not seriously in issue. The period extends from about April 25, 1947 to January 29, 1948, or 275 days. I allow $6 per day or $1,650.