**Lyle DORR, Jr.**

v.

**MAINE MARITIME ACADEMY**

**and**

**Maine Bonding & Casualty Co.**

Supreme Judicial Court of Maine.

Argued Nov. 2, 1995.
Decided Feb. 2, 1996.

Naomi Honeth (orally), Thomas J. Quinn, Beals & Quinn, Portland, for Employee.

Michael J. Dostie (orally), Rella, Dostie & Tucker, P.A., Bangor, for Employer.

Before ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

LIPEZ, Justice.

Lyle Dorr appeals from a decision of the Workers' Compensation Commission denying his petition for review pursuant to 39 M.R.S.A. § 2(5)(A)(1) (Supp.1991),[1] that exempts from the Workers' Compensation Act "[p]ersons engaged in maritime employment or in interstate or foreign commerce, who are within the exclusive jurisdiction of admiralty law or the laws of the United States." The Commission held that Dorr fell within the exclusive jurisdiction of the Jones Act, 46 U.S.C.App. 688, and therefore he was not an employee protected by the Workers' Compensation Act. Because we conclude that Dorr was not a seaman for purposes of the Jones Act, we vacate the Commission decision.

Dorr began working for Maine Maritime Academy ("MMA") in November 1988 as "Chief Engineer" on the R/V Argo Maine ("Argo"), a research vessel. The Argo made occasional day trips for research scientists, rarely staying out of port over night. The Argo had been at sea twenty to thirty days between November 1988 and Dorr's date of injury in April 1989. The Commission found that Dorr spent seventy-five percent of his work-time on shore.

On April 9, 1989 Dorr injured his leg and back while working on the Argo on a routine research voyage. Dorr received partial incapacity and permanent impairment benefits pursuant to an approved agreement. On February 21, 1992 Dorr filed a petition for review seeking total incapacity benefits. In response to the petition, MMA contended for the first time that Dorr was a seaman within the provisions of the Jones Act and that the Commission lacked subject matter jurisdiction over the claim. Dorr brought an action pursuant to the Jones Act in Superior Court on March 6, 1992. The court granted MMA's motion for a summary judgment, concluding that Dorr's action was barred for failure to file a timely notice of claim. 14 M.R.S.A. § 8107 (Supp.1994–95). The Commission denied Dorr's petition for review and later denied his motion for findings of fact and conclusions of law. 39 M.R.S.A. § 2(5)(A)(1). Dorr's appeal to the Appellate Division was not resolved before the termination of the Division on January 1, 1994.

---

1. Subsection 2(5)(A)(1) has been repealed and replaced by 39-A M.R.S.A. § 102(11)(A)(1), which contains identical language. *Maine Work-* *ers' Compensation Act of 1992*, P.L.1991, ch. 885, §§ A–7, A–8 (effective January 1, 1993).

We granted Dorr's petition for appellate review pursuant to 39-A M.R.S.A. § 322 (Supp. 1994-95).

■ The issue of whether an employee falls within the exclusive jurisdiction of a federal statute does not involve an interpretation of the Workers' Compensation Act, nor does it fall within the Commission's traditional area of expertise. We therefore conduct an independent review of the Commission's decision. *Van Houten v. Harco Constr., Inc.*, 655 A.2d 331, 333 (Me.1995); *LeBlanc v. United Eng'rs & Constructors Inc.*, 584 A.2d 675, 677 (Me.1991). It is generally understood that the Jones Act supersedes state workers' compensation laws applicable to seamen. *See Gillespie v. United States Steel Corp.*, 379 U.S. 148, 154-55, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964) (Jones Act preempts the operation of a state wrongful death statute); *Lindgren v. United States*, 281 U.S. 38, 47, 50 S.Ct. 207, 211, 74 L.Ed. 686 (1930) (Same); *Meaige v. Hartley Marine Corp.*, 925 F.2d 700 (4th Cir.1991) (Jones Act preempts state tort action for wrongful discharge); *Indiana & Mich. Elec. Co. v. Workers' Comp. Comm'r*, 184 W.Va. 673, 403 S.E.2d 416, 419-20 (1991) (Jones Act preempts workers' compensation law); 4 A. Larson, *The Law of Workmen's Compensation*, §§ 89.21, 90.20 (1993).[2] As the United States Supreme Court stated in *Lindgren*, the Jones Act was "intended to bring about the uniformity in the exercise of admiralty jurisdiction required by the Constitution" and "as it covers the entire field of liability for injuries to seamen, it is paramount and exclusive, and supersedes the operation of all state statutes dealing with that subject." 281 U.S. at 44, 47, 50 S.Ct. at 210, 211.

■ Pursuant to the Jones Act, "any seaman" may bring a cause of action in negligence for an injury incurred "in the course of his employment." Merchant Marine Act, 41 Stat. 1007 (1920), *codified at* 46 U.S.C.App. § 688(a) (1995). The term "seaman" is not defined in the Act but is generally understood to refer to a "master or member of a crew of any vessel." LHWCA, 33 U.S.C. § 902(3)(G) (1994); *Chandris, Inc. v. Latsis*, 515 U.S. ——, ——, 115 S.Ct. 2172, 2183, 132 L.Ed.2d 314, 329 (1995); *McDermott Int., Inc. v. Wilander*, 498 U.S. 337, 347, 111 S.Ct. 807, 813, 112 L.Ed.2d 866 (1991). In a recent case, decided after the Commission decision at issue in this appeal, the Supreme Court stated that the Jones Act requires a "status-based" approach to the definition of "seaman" based on "[t]he duration of a worker's connection to a vessel and the nature of the worker's activities." *Chandris*, 515 U.S. ——, ——, 115 S.Ct. 2172, 2191, 132 L.Ed.2d 314, 338. Pursuant to the status-based analysis,

> a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature. The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment

**2.** The United States Supreme Court has recognized that there is an exception to exclusive jurisdiction of Congress under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901-950 (1994) (LHWCA) for employees and injuries that fall within a "twilight zone" between strictly maritime and strictly local jurisdiction. *Davis v. Department of Labor*, 317 U.S. 249, 256, 63 S.Ct. 225, 229, 87 L.Ed. 246 (1942); 4 A. Larson, at § 89.24. Employees are not required to elect a remedy pursuant to either state or federal law, but benefits paid for the same injury under one system may be credited against the other. *Parker v. Bath Iron Works*, 644 A.2d 1037, 1039-40 (Me.1994); *Bouford v. Bath Iron Works Corp.*,

514 A.2d 470, 474 (Me.1986), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 951, 93 L.Ed.2d 1000 (1987); *Stockford v. Bath Iron Works Corp.*, 482 A.2d 843, 845 (Me.1984). The United States Supreme Court has never expressly recognized concurrent jurisdiction in cases involving injuries to seamen. 4 A. Larson, at § 90.41. Dorr argues that, as in cases arising within the purview of the LHWCA, there should also be a zone of concurrent jurisdiction between state workers' compensation laws and the federal Jones Act. Because we conclude that Dorr was not a seaman for purposes of the Jones Act, we do not have to address the issue of concurrent jurisdiction in this appeal.

does not regularly expose them to the perils of the sea.

*Id.* at ——, 115 S.Ct. at 2190, 132 L.Ed.2d at 337. As the Supreme Court stated in *Chandris*, "the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time." *Id.* at ——, 115 S.Ct. at 2191, 132 L.Ed.2d at 338.

■ The test articulated in *Chandris* does not lend itself to rigid, bright-line application. The Supreme Court stated, "we think it is preferable to focus upon the essence of what it means to be a seaman and to eschew the temptation to create detailed tests to effectuate the congressional purpose, tests that tend to become ends in and of themselves." *Id.* Nevertheless, the *Chandris* Court does provide a "general rule" related to an employee's temporal relationship to a vessel:

> A maritime worker who spends only a small fraction of his working time on board a vessel is fundamentally land-based and therefore not a member of the vessel's crew, regardless of what his duties are.... Generally, the Fifth Circuit seems to have identified an appropriate rule of thumb for the ordinary case: a worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act. This figure of course serves as no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases.... Nevertheless, we believe that courts, employers, and maritime workers can all benefit from reference to these general principles.

*Id.* at ——, 115 S.Ct. at 2191, 132 L.Ed.2d at 339 (citations omitted). The *Chandris* Court cites a series of cases in the Fifth Circuit, beginning with *Offshore Co. v. Robison*, 266 F.2d 769, 779 (5th Cir.1959), which require, in part, that the employee be "assigned permanently to a vessel" or "perform[ ] a substantial part of his work on the vessel." In *Palmer v. Fayard Moving and Transp. Corp.*, 930 F.2d 437, 439 (5th Cir.1991), also cited with approval by the Court in *Chandris*, the employee was a public relations officer who spent nineteen percent of her work-time aboard a cruise ship that routinely took ten-hour day-voyages. 930 F.2d at 438–39. The Fifth Circuit held that the time spent on the vessel "did not represent a 'substantial part' of Palmer's work," and, therefore, did not satisfy the *Robison* test. Similarly, in *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1075 (5th Cir.1986), the Fifth Circuit concluded that a welder's helper who spent twenty-to-thirty percent of his work on vessels was not a Jones Act seaman. In *Ward v. Reeled Tubing, Inc.*, 637 F.Supp. 33, 37–38 (E.D.La.1986), cited with approval in *Palmer*, 930 F.2d at 439, a federal district court concluded that an employee who performed only twenty percent of his work-time on vessels was not a seaman within the purview of the Jones Act.

■ As the Supreme Court states in *Chandris*, "where undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation, the court may take the question from the jury by granting summary judgment or a directed verdict." *Chandris*, 515 U.S. at ——, 115 S.Ct. at 2191, 132 L.Ed.2d at 339. The Supreme Court stated in *Chandris* that thirty percent of an employee's work-time aboard a ship in navigation was an "appropriate" cut-off point for liability pursuant to the Jones Act. *Id.* We agree with Dorr that, because he spent only twenty-five percent of his time on board the Argo, he had "only a transitory or sporadic connection to a vessel in navigation, and therefore [his] employment [did] not regularly expose [him] to the perils of the sea." *Id.* at ——, 115 S.Ct. at 2190, 132 L.Ed.2d at 337. Although the Supreme Court suggests that "departure" from a hard-and-fast thirty percent rule will be "justified in appropriate cases," *Id.* ——, 115 S.Ct. at 2191, 132 L.Ed.2d at 339, MMA does not provide any compelling argument to justify a departure from that rule in this case.

MMA argues that the time spent by Dorr performing repair work on the Argo while in port could also be considered in the analysis of whether he was a seaman. *Chandris*, 515 U.S. at —— ——, 115 S.Ct. at 2191–93, 132 L.Ed.2d at 340–41; Larson, § 90.21(b) at 16–421. Although we agree with this argument,

we conclude that the Commission considered Dorr's dockside repair and maintenance work in arriving at its conclusion that Dorr's "work was 75 percent on shore." Indeed, the Commission's finding appears to be based on Dorr's response to the following question:

Q: ... [W]hat percentage of your work was on the ship and what percentage of your work was off the ship on the waterfront?

A: [Dorr] It was a fairly new program for the Argo, so we didn't have much work. So I'd say—I'd have to say seventy-five percent was on shore.

Taken in context, Dorr's statement that he spent seventy-five percent of his work-time on shore refers to time spent "off the ship on the waterfront." After careful review of the record, we conclude that dockside repair work on the Argo, or other Maine Maritime vessels, did not contribute to Dorr's temporal connection to the vessel beyond the twenty-five percent found by the Commission.

■ A "thirty percent rule" enables maritime employers and employees to determine their coverage pursuant to the Jones Act in the event of, and in advance of, an injury. *Chandris,* 515 U.S. at ——, ——, 115 S.Ct. at 2187, 2191, 132 L.Ed.2d at 334, 339. The result in this case is consistent with the policy recognized in *Chandris* to promote "the interests of employers and maritime workers alike in being able to predict who will be covered by the Jones Act ... before a particular work day begins." *Id.* ——, 115 S.Ct. at 2187, 132 L.Ed.2d at 334. The Commission, having concluded that Dorr spent seventy-five percent of his work-time on shore, erred as a matter of law in concluding that he was a "seaman" within the purview of the Jones Act. Because Dorr did not have an adequate temporal connection to a vessel in navigation, he was not a "seaman" for purposes of the Jones Act, and, accordingly, we vacate the decision of the Commission.

The entry is:

The decision of the Workers' Compensation Commission is vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with the opinion herein.

All concurring.