[Civ. No. 52807. Second Dist., Div. Two. Oct. 25, 1978.]

Estate of JEAN PAUL GETTY, Deceased.
ANNE CATHERINE GETTY, Petitioner and Appellant, v.
GORDON PETER GETTY et al., Objectors and Respondents.

**COUNSEL**

Butler, Jefferson & Dan, James G. Butler, Moses Lebovits and Jesse Dukeminier for Petition and Appellant.

Magaram, Riskin, Wayne & Minikes, Musick, Peeler & Garrett, Joseph D. Peeler, Bruce A. Bevan, Jr., Overton, Lyman & Prince, Ernest E. Johnson, Edmond R. Davis, John A. Payne, Jr., Brobeck, Phleger & Harrison, Moses Lasky and George T. Cronin for Objectors and Respondents.

**OPINION**

**FLEMING, J.**—Petition by Anne Catherine Getty to contest the 21st codicil to the September 1958 will of her grandfather, Jean Paul Getty.

Petitioner does not contest the will and its first 20 codicils, but asserts that decedent lacked testamentary capacity when he executed the 21st codicil on 11 March 1976, or in the alternative that he executed the codicil under the undue influence of his close advisers. The trial court ruled petitioner was not an interested person within the meaning of Probate Code sections 370 and 380 and sustained respondents' general demurrer without leave to amend. Petitioner appeals the judgment of dismissal.

The 1958 Getty will set forth a general plan of distribution which gave real property in Pacific Palisades and Getty's art collection to the trustees of the J. Paul Getty Museum (museum). After individual bequests, the will left the residue of the estate directly to the museum trustees to become part of the museum's endowment fund. If for any reason the bequest were invalidated, the residue of the estate would go to a trust created under the will, with income payable to specified universities. The will named decedent's four sons, George F. Getty II, Jean Ronald Getty, Eugene Paul Getty, and Gordon Peter Getty, as trustees of all trusts created under the will.

In November 1967 decedent executed a ninth codicil to the 1958 will. This codicil left the residue of his estate in trust to trustees under the will, with all income payable to the museum. It eliminated Gordon Peter Getty as a trustee and named decedent's other three sons—George F. Getty II, Jean Ronald Getty, and Eugene Paul Getty—as trustees, with the added provision that when the last of them ceased to act as trustee, whether from death or otherwise, the three oldest (over 21) lineal descendants of the testator would succeed and serve as cotrustees. Petitioner Anne, the daughter of George F. Getty II, is the eldest of decedent's grandchildren. The 14th codicil executed in July 1971 eliminated Eugene Paul Getty as a trustee of trusts under the will. The 16th codicil executed in June 1973 eliminated George F. Getty II, by then deceased, as a trustee of trusts under the will, and named Jean Ronald Getty and a bank as trustees of trusts under the will. In the 19th codicil executed in January 1975 Gordon Peter Getty was reinstated as a trustee of trusts under the will, joining Jean Ronald Getty and Title Insurance and Trust Company as trustees; and the number of contingent successor trustees was reduced to the testator's two oldest lineal descendants (with specified exceptions).

On 11 March 1976 decedent executed the 21st (and last) codicil, which eliminated the trust under the will as recipient of the residue of his estate

and reinstated the museum trustees as residuary legatees of the estate for the benefit of the museum's endowment fund. Decedent died 6 June 1976, approximately three months after executing the 21st codicil. Both Jean Ronald Getty and Gordon Peter Getty, the named individual trustees and executors under the 21st codicil, survived decedent, and in conjunction with Title Insurance and Trust Company they serve as executors and trustees of trusts under the will.

The residue of the estate, approximately 20 percent of all outstanding shares of Getty Oil Company, has an estimated value in excess of $700 million.

The sole issue on appeal is whether petitioner, a contingent trustee for all trusts created under the will, is an "interested person" within the meaning of Probate Code sections 370 and 380, and thus authorized by statute to contest the validity of the 21st codicil. We hold she is not and affirm the trial court's ruling.

Probate Code sections 370 and 380 allow an "interested person" to contest the validity of a will. In the absence of a legislative definition, the courts have construed the term to mean that a person is "interested" within the meaning of these sections when the person's interest in the estate would be ". . . impaired or defeated by the probate of the will, or benefited by setting it aside." (*Estate of Plaut* (1945) 27 Cal.2d 424, 425-426 [164 P.2d 765, 162 A.L.R. 837].) The right of a person to contest a will is based upon the loss of property or property rights that would result from recognition of an invalid instrument which deprives the person of those rights. (*Estate of Baker* (1915) 170 Cal. 578, 585 [150 P. 989]; *Jay* v. *Superior Court* (1970) 10 Cal.App.3d 754, 757 [89 Cal.Rptr. 466].) Illustrative of interested persons are: decedent's heirs, who take by intestate succession if a will is invalid (*Estate of Baker, supra*; *Estate of Robinson* (1963) 211 Cal.App.2d 556 [27 Cal.Rptr. 441]; *Estate of Emery* (1960) 199 Cal.App.2d 22 [18 Cal.Rptr. 86]); contingent remaindermen under a testamentary trust (*Estate of Plaut, supra*); judgment lien creditors of a disinherited heir (*Estate of Harootenian* (1951) 38 Cal.2d 242 [238 P.2d 992]); beneficiaries of a decedent's tax-liened life insurance policy (*Estate of Kovacs* (1964) 227 Cal.App.2d 308 [38 Cal.Rptr. 612]).

The crux of the dispute here centers on the general conception that a person must have a *pecuniary* interest in an estate to contest a will. (*Estate of Harootenian, supra*, 38 Cal.2d 248; *Estate of Lane* (1970) 7 Cal.App.3d 402, 405 [86 Cal.Rptr. 620]; *Estate of Molera* (1972) 23 Cal.App.3d 993,

998 [100 Cal.Rptr. 696], summarizing cases.) Respondents claim that the necessity for a pecuniary interest absolutely precludes a trustee, in this case a contingent trustee, of a superseded testamentary instrument from attacking the validity of the document presented for probate. Petitioner, citing cases from other jurisdictions, asserts that a contingent trustee is necessarily an interested person with standing to contest a subsequent codicil which eliminates a trust.[1] We think both sides overstate.

Initially, we note petitioner does not contest the validity of the 1958 will and its first 20 codicils, but takes issue solely with the validity of the 21st codicil. Petitioner asserts no basis for an "interest" predicated on possible intestate succession since: (a) she does not assert a lack of testamentary capacity prior to the 21st codicil, and (b) the prior, presumably valid will and codicils provide a complete scheme of charitable bequests—contingent upon the failure or invalidity of the initial museum bequest—which renders any reversionary interest in the intestate heirs so remote as to preclude standing to contest on that basis.[2] We also note that, according to the briefs, petitioner is the recipient of a princely income from her grandmother's trust, the Sarah C. Getty Trust of 1934, and enjoys an expectancy of a royal fortune in principal on the termination of that trust.

Petitioner, therefore, must claim an interest in the estate solely by virtue of her asserted position under the 19th and 20th codicils as a contingent trustee of a trust created under the will to hold the residue of the estate.[3]

A testamentary trustee takes legal title to the trust corpus, with equitable title and the right to enforce performance of the trust vested in

---

[1]*In re Maricich's Estate* (1962) 140 Mont. 319 [371 P.2d 354]; *Reed* v. *Home Nat. Bank* (1937) 297 Mass. 222 [8 N.E.2d 601]; *Matter of Estate of Fender* (1975) 168 Mont. 200 [541 P.2d 784]; *In re Stewart's Estate* (1898) 107 Iowa 117 [77 N.W. 574]; *In re O'Brien's Estate* (1942) 13 Wn.2d 581 [126 P.2d 47]; *State* v. *Haddock* (Fla. 1962) 140 So.2d 631; *Johnston* v. *Willis* (1925) 147 Md. 237 [127 A. 862]; *In re Rogers' Estate* (1951) 15 N.J. Super. 189 [83 A.2d 268].

[2]*Estate of Robinson* (1963) 211 Cal.App.2d 556 [27 Cal.Rptr. 441], is readily distinguishable. There, even though the beneficiaries received a larger bequest in the subsequent will the court held them to be interested persons who could contest the will based on their capacity as intestate heirs if they were ultimately successful in setting aside the entire series of testamentary instruments.

[3]Under the rationale of *Estate of Plaut* the contingent nature of petitioner's asserted interest does not in itself preclude standing for a will contest. (*Estate of Plaut* (1945) 27 Cal.2d 424, 428-430 [164 P.2d 765, 162 A.L.R. 837].)

the beneficiary. (*Estate of Muhammad* (1971) 16 Cal.App.3d 726, 733 [94 Cal.Rptr. 856], summarizing cases.) Clearly, a trustee's naked legal title to the trust corpus is not a pecuniary interest, since he takes title solely for the benefit of the named beneficiaries. However, lack of direct pecuniary interest does not absolutely foreclose an omitted trustee's right to contest a will. In appropriate circumstances an executor omitted from a later will has a right to contest the subsequent will to insure that the testator's intent, as expressed in bequests to the beneficiaries under the will, is not impaired or thwarted by probate of a testamentary document which is not genuine or which is the end-product of undue influence or mental disability. (*Estate of Costa* (1961) 191 Cal.App.2d 515, 518 [12 Cal.Rptr. 920]; *Jay* v. *Superior Court* (1970) 10 Cal.App.3d 754, 758 [89 Cal.Rptr. 466].) By direct analogy a testamentary trustee is the representative of his beneficiaries and the guardian of their interests, and, where appropriate, he may contest a subsequent testamentary document which impairs the pecuniary interests of the beneficiaries in the estate property. Therefore, a trustee's standing to contest a will does not depend strictly on a personal pecuniary interest in the bequeathed corpus under the prior instrument, but may be made determinate by impairment of the pecuniary rights of the beneficiaries by the probate of the subsequent testamentary document.

Thus, in the abstract, petitioner is correct in asserting that a testamentary trustee, in this case a contingent trustee, may contest a subsequent will. However, analysis of the ultimate effect of the contested change on the beneficiary here—the museum—does not disclose any impairment of its interest as a result of the subsequent codicil. Quite the contrary. Under both the 20th and 21st codicils the museum is entitled to receive all income from the residue of the estate. The sole difference under the 21st codicil is that control of the assets, primarily stock, is shifted from a trust under the will to the museum trustees and the income now goes directly to museum purposes. ██ The subsequent change has the effect of enhancing the museum's income by eliminating the sizeable trustee fees of the intermediate trust under the will, which, under earlier codicils, would become payable to the testamentary trustees.[4]

---

[4]The 19th codicil, like earlier codicils, directed that executors and trustees "shall serve for the statutory commissions provided by the applicable laws of the State of California." With respect to the compensation of trustees, California law provides only that trustees shall be entitled to reasonable compensation fixed by the court (Prob. Code, § 1122), but in a trust with a corpus of $700 million even amounts of "reasonable compensation" are bound to be staggering.

In January 1977, seven months after Getty's death $3 million was paid to the executors of the Getty estate as partial allowance on statutory commissions of over $7 million, and

██ Hence the museum will profit financially by elimination of the intermediate trust. The right to control the trust res and receive statutory fees for administration of the trust, though admittedly legal interests which stem from management of the corpus, are not rights to the estate res that constitute sufficient pecuniary interest to give standing to the omitted trustees to contest the codicil without reference to the effect of the subsequent codicil on the beneficiary. (Cf. *Jay* v. *Superior Court, supra,* 10 Cal.App.3d 759.) Since the pecuniary interest of the beneficiary of the residue of decedent's estate is not impaired but is enhanced by the 21st codicil's elimination of the intermediate trust, petitioner does not qualify as an interested person within the meaning of Probate Code sections 370 and 380.

The right to contest a will is purely statutory. (*Jay* v. *Superior Court, supra,* 10 Cal.App.3d 758, summarizing cases.) Petitioner's additional contentions about the testator's intent to retain family control over the Getty Oil Company stock that constituted the bulk of decedent's estate, and about his desire to have his lineal descendants act as financial watchdogs for the museum,[5] are irrelevant and do not provide a substitute for petitioner's lack of a pecuniary interest or for the beneficial representation that would entitle her to contest the will.

---

$2 million was paid to the attorneys for the executors as partial allowance on statutory fees of over $7 million (Prob. Code, §§ 901, 910.) The statute specifies amounts of commissions and fees in regressive percentages for estates up to $500,000, and then states a rate of 1 percent "for all above $500,000." Quere: did the legislative scheme ever contemplate or visualize an estate of this size, and, if it did not, is there a gap in statutory rates which the court should fill by fixing reasonable compensation? (*Church of the Holy Trinity* v. *United States* (1892) 143 U.S. 457 [36 L.Ed. 226, 12 S.Ct. 511].) Ordinarily, the museum trustees would be the ones to take action on behalf of the charitable beneficiary to challenge this monumental windfall of commissions and fees to executors and their attorneys for administering what is essentially a liquid, one-asset estate. However, the composition of the museum's board of trustees makes it doubtful that the board could impartially consider this question, let alone take vigorous action, by reason of the conflicts of interest present between the trustees' duties as guardians of a charitable trust and their personal welfare as executors, of the estate, affiliates of attorneys for the estate, and officers and employees of Getty Oil Company. When charitable trustees are unable to act to protect the interests of their beneficiary, the duty to act devolves upon the Attorney General of California. (Gov. Code, §§ 12511, 12591.) We invite the Attorney General to consider, negotiate, and take appropriate action.

[5] Absent some conflict of interest, the law does not presume that trustees of a charitable trust will fail to manage the trust corpus in the best interests of the beneficiary, and, indeed, public agencies are charged with the duty to see that they do. (For Attorney General's obligation to supervise charitable trusts, see Gov. Code, §§ 12511, 12580-12597 and cf. Corp. Code, §§ 9505, 10207; for the superior court's comparable obligations, see Civ. Code, §§ 2283, 2287, 2289.) We note that Jean Ronald Getty and Gordon Peter Getty, the individual trustees named under the 20th and 21st codicils are also trustees of the museum.

Our decision on petitioner's lack of standing to contest renders moot respondents' contentions of untimely filing of the petition and improper joinder of parties.

The judgment is affirmed.

Roth, P. J., and Beach, J., concurred.

A petition for a rehearing was denied November 13, 1978, and on November 15, 1978, the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied January 17, 1979. Bird, C. J., did not participate therein.