[No. D005443. Fourth Dist., Div. One. Dec. 4, 1987.]

Estate of PIERRE BAIRD, Deceased.
EMILY BAIRD, as Executrix, etc., Petitioner and Respondent, v.
VIOLET DuFRIEND, Claimant and Appellant.

COUNSEL

Michael L. Jimmink for Claimant and Appellant.

Wayne L. McCabe for Petitioner and Respondent.

OPINION

**TODD, J.**—Violet DuFriend, the mother of decedent Pierre Baird, attacks the appointment of Emily Baird, her son's widow, as executrix of the estate. The principal issues on appeal are whether the proceeds of a Jones Act (46 U.S.C. § 688) settlement are an asset of the decedent's estate and whether DuFriend has standing to pursue this action.

## FACTS

Pierre Baird and Patricia Elmore were married on March 5, 1977.

Pierre Baird executed a will May 18, 1983, in which he stated "I was married to Patricia Baird . . . and I am presently uncertain as to the status as to whether or not that marriage has been dissolved." He also stated his intention that Patricia Baird receive nothing from his estate. He gave two-thirds of his estate to his mother, Violet DuFriend, and one-third to a sister, Colleen Reusswig. He nominated DuFriend as executor.

On June 11, 1983, Pierre Baird married Emily Baird in a confidential marriage. On June 21, 1983, Pierre Baird executed a will revoking all previous wills, giving 80 percent of his property to Emily Baird, 10 percent

to Violet DuFriend and 10 percent to Colleen Resswig (*sic*).[1] He also nominated Emily Baird as his executrix.

Pierre Baird died March 8, 1984.

On May 29, 1984, Emily Baird filed a petition for probate of the June 21, 1983, will. The petition listed a pending Jones Act claim as the estate's sole asset. The court issued letters testamentary naming Emily Baird as executrix.

On May 23, 1986, Emily Baird received $68,620.33 as a settlement of the Jones Act suit. She did not report the receipt of the award to the court. (She did, however, give DuFriend 10 percent of the award, honoring Pierre's wishes as stated in his June 21, 1983, will; DuFriend did not cash the two checks made in payment.)

On August 4, 1986, DuFriend filed a motion to revoke the letters testamentary. On August 22, 1986, Emily Baird filed a motion to terminate the probate matter and discharge her as executrix, alleging the estate had no assets or debts. The trial court, following a hearing, granted Emily Baird's motion and denied DuFriend's motion.

DuFriend appealed, contending (a) the trial court lacked jurisdiction because of notice defects in the original probate proceeding and (b) the Jones Act settlement proceeds were estate assets that should have been distributed by the court.

Patricia Baird (the first wife) has never joined DuFriend's motion or appeal. However, Patricia Baird filed a declaration in which she stated she and Pierre Baird were never divorced and their marriage was never annulled.

## DISCUSSION

### I

DuFriend attacks the jurisdiction of the trial court, contending Emily Baird failed to comply with the notice requirements in the Probate Code. Probate Code[2] section 328 requires the petitioner for the probate of a will to serve notice at least 10 days before the hearing upon each heir of the testator and each beneficiary named in the will as well as each person who is

---

[1] The correct spelling is Reusswig.

[2] All statutory references are to the Probate Code unless otherwise specified.

named as executor and is not petitioning. As applicable here, section 333 requires notice of the hearing be published in a newspaper of general circulation in the city where the decedent lived at time of death.

In raising the issue of compliance with section 333, DuFriend apparently was not aware of the "NOTICE OF DEATH OF PIERRE BAIRD AND OF PETITION TO ADMINISTER ESTATE NO. PN 10932" published in the Vista Press on May 31, June 1, and June 7, 1984. In any event, the record is clear there was compliance with section 333.

As to section 328, DuFriend contends there were two aspects to the purported noncompliance.

First, she contends Emily Baird served the wrong form. The record shows Emily Baird served a "Notice of Death of and of Petition to Administer Estate" (Judicial Council Form DE-121) upon DuFriend and Reusswig. DuFriend contends Emily Baird should have served a "Notice of Hearing (Probate)" form (Judicial Council Form DE-120). ▮ DuFriend argues the latter preprinted form specifically informs the person being served that a petition for the probate of a will has been filed, while the former preprinted form does not.

Section 328 does not specify a particular form to use. It does, however, require the notice advise the person receiving it that he or she may serve upon the executor or administrator a written request for special notice of the filing of an inventory and appraisement of estate assets or of the petitions or accounts mentioned in sections 1200 and 1200.5. Judicial Council Form DE-121, which Emily Baird used, does contain such an advisement— as does Judicial Council Form DE-120.

The record shows DuFriend knew her son had prepared at least one will. We find under these circumstances the notice Emily Baird served upon DuFriend was constructive notice of a hearing to admit a will to probate.

▮ Second, DuFriend contends Emily Baird failed to comply with section 328 by not serving Pierre Baird's three half-sisters who were specifically disinherited in the will. DuFriend is correct that section 328 requires heirs of the decedent as well as legatees and devisees to be noticed. DuFriend is incorrect, however, in insisting the three disinherited half-sisters are heirs. " 'The word "heirs" means the persons who would be entitled to succeed at his death to his estate in case of intestacy, by virtue of our

statutes relative to succession.'" (*Dickey* v. *Walrond* (1927) 200 Cal. 335, 339 [253 P. 706].)³ Under section 6400 et seq., containing the rules of intestate succession, the three half-sisters clearly are not heirs and, therefore, Emily Baird was not required to serve notice on them.

The trial court correctly found notice had been given in compliance with the requirements of the Probate Code.

## II

This probate case is somewhat out of the ordinary because for all practical purposes there were no estate assets. Pierre Baird, a retired merchant marine, had contracted asbestosis and emphysema. Thereafter, he filed suit under the Jones Act to recover damages. The action was pending at his death. We begin our discussion with a brief examination of the Jones Act.

■ First, it is clear federal law preempts state law in this area. Section 33 of the Merchant Marine Act of 1920, commonly referred to as the Jones Act, "is one of general application intended to bring about the uniformity in the exercise of admiralty jurisdiction required by the Constitution . . . ." (*Lindgren* v. *United States* (1930) 281 U.S. 38, 44 [74 L.Ed. 686, 691, 50 S.Ct. 207].) Congress, in the exercise of its paramount authority to legislate, enacted the Jones Act, which "necessarily supersedes the application of the death statutes of the several States." (*Ibid.*)

Besides serving as a death statute, the Jones Act also confers rights on an injured seaman. When death of a seaman results from a personal injury suffered in the course of his employment, the personal representative of the seaman may maintain the action for damages at law. (See 46 U.S.C. § 688.) The Jones Act incorporates by reference and makes applicable to seamen the rights and remedies given to railway employees by the Federal Employers' Liability Act (45 U.S.C. § 51). The Federal Employers' Liability Act provides that in the event of death of a railway employee a right of action is given "to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, . . . ." (45 U.S.C. § 51.)

The personal representative when suing under the Jones Act does not act for the benefit of the seaman's estate but for the designated survivors who

---

³Probate Code section 44, which became effective on January 1, 1985, now codifies this definition: " 'Heirs' means the persons, including the surviving spouse, who are entitled under the statutes of intestate succession to the property of a decedent." (See Stats. 1983, ch. 842, § 21, operative Jan. 1, 1985.)

are named in the statute. (*Lindgren, supra,* 281 U.S. at p. 41 [74 L.Ed. at p. 690].) The personal representative is but a trustee of the beneficiaries designated in the statute, and if no beneficiary survives the deceased seaman, the personal representative cannot maintain an action. (*Ibid.*)

In *The Pan Two* (D.Md. 1939) 26 F.Supp. 990, the court was asked to decide whether the Ohio administrator of a deckhand, who was drowned when a tug sank, can maintain a Jones Act lawsuit in district court in Maryland on behalf of the deckhand's statutory beneficiaries. The court noted the general principle that an executor or administrator ordinarily has no extra-territorial powers beyond the state where he is appointed and therefore can not maintain suits in courts of other states or in federal courts outside of that jurisdiction. However, the court concluded: "This general principle of the common law has, I think, no proper application to the particular case because the administrator is here suing not as a common law administrator for the purpose of collecting and distributing assets of the decedent, but in the capacity of a trustee for a preferred class of relatives." (*The Pan Two, supra,* 26 F.Supp. at p. 991.)

The court in *The Pan Two* went on to say: "In giving the right of action to the personal representative without further description, Congress evidently intended to confer the right upon the lawfully and properly appointed executor or administrator of the decedent, [citation] but for the purposes of the suit he must be regarded as a trustee rather than as an executor or administrator. Although the title to the recovery is vested in him, he is not the real beneficiary of the suit but in this respect merely a nominal party holding title for the benefit of the decedent's dependents as prescribed by statute. His authority to maintain the suit does not derive from laws of the State of his appointment as an executor or administrator but is a federal statutory right and power given to carry out the policy of the federal statutes." (*Id.* at p. 993.)

To the suggestion that the problem of an out-of-state administrator could be solved by the appointment of an ancillary administrator in the state in which the particular district court is located, the court in *The Pan Two* observed: "[T]here is nothing in the statute to indicate a necessity for this, and also nothing in the nature of the right of action, as the general reason for the appointment of an ancillary administrator in a particular State is merely to administer assets of the decedent situated in that State. As the particular right of action is not an asset of the estate of the decedent there is no necessity for the appointment of an ancillary administrator." (*Ibid.*)

We find the reasoning of the court in *The Pan Two* persuasive. From *The Pan Two* and the other authorities, it is clear the Jones Act settlement here

was not an asset of the Baird estate. Therefore, Pierre's personal representative was merely the trustee or conduit for the Jones Act statutory beneficiary, i.e., Pierre's widow.[4]

### III

As discussed above, if DuFriend's motion to revoke the previous letters testamentary had been granted and she had been named Pierre's executrix or administrator, she would not have been entitled to keep any of the Jones Act settlement. She would have been required by federal law to hold it as trustee for Pierre's widow, presumably Emily.[5] What then is DuFriend's interest in all this; does she have standing?[6]

First, some general principles of California probate law: The testator has a right to nominate his executor, and his intention will normally be carried out even though he does not specifically name the person or use the most direct or appropriate language. (§ 402; *Estate of Henderson* (1925) 196 Cal. 623, 639 [238 P. 938].)

The appealable decrees and orders are set forth in section 1240, and are strictly limited to those listed. The general principle that only an aggrieved party may appeal (see 9 Witkin, Cal.Procedure (3d ed. 1985) § 139, pp. 148-150) applies. Thus, ordinarily an executor or administrator as such is not aggrieved by a decree of distribution. (*Estate of Murphey* (1936) 7 Cal.2d 712, 717 [62 P.2d 374].)

In *Jay* v. *Superior Court* (1970) 10 Cal.App.3d 754 [89 Cal.Rptr. 466], petitioner was named as a co-executor in a will and a first codicil thereto. A second codicil revoked his nomination as co-executor, but made no change in the disposition of the testator's property. Petitioner was not an heir or a devisee or legatee under the will. The court held petitioner lacked standing to contest the second codicil; his only legal interest in the estate was in receiving administration fees for his services as executor.

---

[4] An unavoidable question here is who is Pierre's widow—Emily or Patricia? In either case, DuFriend is not entitled to any of the settlement. (The only way DuFriend would be entitled to any of the settlement is if Pierre did not have a widow at the time of the settlement; and we know that is not the state of the facts here.)

[5] The only way Emily is not entitled to keep the Jones Act settlement is if she is not Pierre's widow. She is not Pierre's widow if he was still legally married to Patricia on June 11, 1983. In such a case, Patricia, not DuFriend, would receive the Jones Act settlement. We do not pursue this issue since Patricia, the proper person to attack the validity of Pierre's and Emily's marriage, is not before the court.

[6] Since DuFriend instituted this probate proceeding in state court and there is no admiralty law of probate, it is proper to rely on California law to determine the issue of standing in probate court.

"It appears to be well settled in this state that an executor who is named in a will which has been offered for probate, or which has been admitted to probate, has the right to oppose or resist a contest *to* such will. [Citations.] In these cases it was not questioned that the *contestant* was a 'person interested' and was entitled to file the contest.

"It has also been held in California that an executor could also *contest* a subsequent will, even though he had no beneficial interest in the estate. (*Estate of Costa,* 191 Cal.App.2d 515 [12 Cal.Rptr. 920]; *Estate of Langley,* 140 Cal. 126 [73 P. 824].) The right is not based upon any pecuniary interest of the executor in the devolution of the estate, but rather upon the theory that he represents those who would be entitled to the estate under the will in which he is named as executor, and, in a representative capacity, he has the right to see that the testator's wishes are not thwarted by admission to probate of a testamentary paper which is not genuine. But *Costa* and *Langley, supra,* do not directly deal, either in the facts or the holding, with the instant case wherein the subsequent document effects no changes in the dispositive provisions, and only changes an executor; and we have found no California authority, and none is cited, which holds that in such a case an executor may contest the subsequent will or codicil.

"While a beneficiary under an earlier will may contest a later one without first obtaining probate of the former, [citation] he may not do so if his pecuniary interest in the devolution of the property would not be affected or impaired by the later will or codicil. [Citation.] And in *Estate of Anthony,* 127 Cal.App. 186 . . . , the court states that an heir at law of the decedent is not necessarily a 'person interested,' and may be without the right to petition for revocation of a will by reason of other facts which show he has no direct pecuniary interest which will be affected by the probate of the will. [Citations.] It is also noted that the right to contest is purely statutory. [Citations.]

"Petitioner concedes that such is the law, but contends that an executor has the right, or even the duty to uphold 'his' will as against a subsequent will or codicil, regardless of the provisions of the later instrument. However, in the instant case, petitioner's only legal interest in the estate is in serving as executor and receiving administration fees for such services. It is not shown wherein the object and intent of the testator will be thwarted by the provisions of the Second Codicil. Under court supervision, the property must be distributed in accordance with the provisions of the will whether the co-executor is the widow or petitioner." (*Id.* at pp. 758-759, fn. omitted.)

Also in *Estate of Getty* (1978) 85 Cal.App.3d 755 [149 Cal.Rptr. 656], the court held petitioner (a contingent testamentary trustee) lacked pecuniary interest and therefore standing to contest the latest codicil to a will.

Although this case is not a will contest, we find the reasoning of the above cases analogous on DuFriend's standing here.

 Here, the estate had no assets. Section 901 provides the compensation of an executor or administrator for ordinary services is a percentage of the amount of estate accounted for. Any percentage of zero is zero. Therefore, DuFriend has no pecuniary interest in being executrix and, hence, no standing on appeal. Accordingly, we dismiss her appeal. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 515, p. 498.)

## DISPOSITION

Appeal dismissed.

Wiener, Acting P. J., and Butler, J., concurred.